OPINION OF THE COURT
Bellacosa, J.
The decisive issue is whether Penal Law § 40.15, defining New York’s affirmative defense of mental disease or defect, violates the State constitutional Due Process Clause because Penal Law § 25.00 (2) places the burden of proof by a preponderance of evidence on defendants for all affirmative defenses. We conclude that there is no State constitutional violation because placing this burden on the defendant does not relieve or transform the People’s primary and constant burden of proving, beyond a reasonable doubt, all the elements of the crimes charged, including all components of the applicable *194 culpable mental state element. Thus, we affirm the Appellate Division order upholding the conviction.
Defendant rented a house on a dairy farm in which he resided with his girlfriend and their infant son. On May 13, 1985, Peter Schütz took his two sons, aged 2 and 3, with him to the dairy farm to deliver feed. When the delivery was completed, Schütz lifted his sons into the front seat of his truck and started to leave. Defendant came out of his house and fired shots from a .12 gauge shotgun into the front seat. The initial shots killed one son and wounded the other and Schütz. Returning to his house, defendant told his girlfriend that the man outside had sexually assaulted defendant’s children. Defendant reloaded the gun and ran out screaming, "I got to get him. He’s getting away.” Schütz had staggered to the barn where defendant stalked him, firing two more shots. Schütz was on his hands and knees pleading for his life when defendant fired two final, fatal shots, saying, "Take that, you son of a bitch.” The owner of the farm appeared and yelled, "Why, why did you do this?” Defendant said that Schütz was going to pay one of his sons to sexually assault defendant’s infant son. Before the police arrived, defendant assured his girlfriend, "They can’t hurt me. I’m from another planet.”
Defendant was charged with two counts each of intentional and depraved mind murder, second degree, and one count each of intentional and depraved mind assault, first degree. He waived his right to jury trial (CPL 320.10), and indicated that he would assert the affirmative defense of mental disease or defect (Penal Law § 40.15).
At the bench trial, the prosecution at first concentrated on the factual developments by testimony of the eyewitnesses. The defense then called the defendant’s girlfriend and his mother, who testified defendant frequently complained of severe head pains and exhibited bizarre behavior. Two psychiatrists, as experts for defendant, added that he was suffering from schizophrenia, paranoid type. The People presented two psychiatrists who, after examination of defendant, concluded he was not suffering from any mental disease or defect. Three of these psychiatrists agreed that at the time defendant fired the gun he intended to shoot his victims and that it was reasonable to conclude that defendant knew that firing a gun could kill his victims.
The trial court found defendant guilty of intentional murder of Schütz, depraved mind murder of one son, and depraved *195 mind assault of the other son. The trial court expressly found that "each and every element of those three counts * * * have been proven beyond a reasonable doubt” and that "defendant has failed to prove by a preponderance of the evidence that he should be found not guilty because he lacked criminal responsibility by reason of mental disease or defect”.
In New York, criminal responsibility may be avoided if "as a result of mental disease or defect, [defendant] lacked substantial capacity to know or appreciate either: 1. The nature and consequences of such conduct; or 2. That such conduct was wrong” (Penal Law § 40.15). Prior to 1984, the so-called insanity defense was catalogued as a traditional defense which the prosecution bore the burden of disproving beyond a reasonable doubt, in addition to its usual burden as to all elements of the crimes charged (Penal Law § 25.00 [1]; and former § 30.05 [2]). The prosecution, of course, enjoyed the presumption that all persons are sane. Thus defendant, even under former law, bore some burden of coming forward with evidence rebutting the presumption of sanity (see, People v Silver, 33 NY2d 475, 480-481; Brotherton v People, 75 NY 159, 162-163). The presumption, however, was rebuttable: "[the] slightest creditable attack * * * even 'non-psychiatric proof alone might overcome the presumption and sustain a verdict of acquittal” (People v Silver, supra, at 481-482). In 1984, after years of intensive study and debate, the Legislature repealed Penal Law § 30.05 and substituted Penal Law § 40.15, which made mental disease or defect an "affirmative” defense (L 1984, ch 668; see also, Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 40.15, at 141-144; McQuillan, Insanity as Affirmative Defense — A Proposed Standard in New York, NYU, June 22, 1987, at 1, col 3; 1981 Report of NY Law Rev Commn, 1981 NY Legis Doc No. 65, reprinted in 1981 McKinney’s Session Laws of NY, at 2251-2293).
The United States Supreme Court has upheld several statutes placing the burden of proof for insanity on a defendant. In Leland v Oregon (343 US 790, reh denied 344 US 848), a murder conviction was challenged on the ground that requiring defendant to prove insanity beyond a reasonable doubt at the time of the murder violated due process under the 14th Amendment. The Supreme Court upheld the Oregon statute, noting that the burden of proving premeditated design — that statute’s mens rea — was on the People initially and at no time shifted to the defendant. Defendant, on the other hand, had *196 the burden of proving insanity — a legally distinct issue. The Supreme Court gave special weight to the fact that the jury was instructed that they first had to consider whether the People had sustained their full burden, and that only if satisfied beyond a reasonable doubt of defendant’s guilt could the jury then turn to the issue of defendant’s insanity and his burden in respect to it (see also, Rivera v Delaware, 429 US 877).
In Mullaney v Wilbur (421 US 684), defendant was charged with murder under a Maine homicide statute. Defendant raised that State’s statutory affirmative defense, which placed on defendant the burden of proving "heat of passion on sudden provocation”. The jury was instructed that the "malice aforethought” component of the Maine statute was an indispensable element of the crime and that "malice” could be implied from a deliberate act committed suddenly, without provocation. Consequently, the prosecution’s burden of proving malice was satisfied by a presumption and the prosecution was never required to come forward with evidence of malice. The instruction emphasized that " 'malice aforethought and heat of passion on sudden provocation are two inconsistent things’ * * * thus by proving the latter the defendant would negate the former” (see, Mullaney v Wilbur, supra, at 686-687). The Supreme Court held that, under this statutory scheme and jury instruction, defendant’s Federal due process rights were transgressed because the prosecution could rest on a presumption of malice throughout the trial, while the defendant was required to negate that very presumption with proof that he acted under the heat of passion, thus causing defendant to disprove directly a presumed essential element of the crime charged.
Those cases were building blocks to People v Patterson (39 NY2d 288, affd 432 US 197), where we and the Supreme Court itself upheld, against a Federal constitutional due process challenge, New York’s affirmative defense of extreme emotional disturbance (Penal Law § 125.25 [1]). We analogized that affirmative defense to the Oregon statute in Leland and distinguished it from the Maine statute in Mullaney, saying: "[The] prosecution is at all times required to prove, beyond a reasonable doubt, the facts bearing [on] the defendant’s intent. That the defendant acted because of an extreme emotional disturbance does not negate intent. The influence of an extreme emotional disturbance explains the defendant’s intentional action, but does not make the action any less inten *197 tional” (39 NY2d, supra, at 302). The Supreme Court affirmed (432 US 197) and held: "This affirmative defense * * * does not serve to negative any facts of the crime which the State is to prove in order to convict of murder. It constitutes a separate issue on which the defendant is required to carry the burden of persuasion” (id., at 206-207; see also, Martin v Ohio, 480 US 228, 235, 236).
Recognizing the high hurdles impeding a successful Federal constitutional challenge, defendant asserts that the New York State Constitution should provide a more stringent due process standard than that allowed by the Supreme Court cases, and that, alternatively, New York’s presumption of sanity renders Penal Law § 40.15 unconstitutional.
In determining whether to exercise independent judgment under the New York State Constitution to provide greater protection than the due process floor set by the Supreme Court, we first look to the texts of the Constitutions. If the provision at issue differs from that of its Federal counterpart, we examine the historical basis for the distinction (People v P. J. Video, 68 NY2d 296, cert denied 479 US 1091; People ex rel. Arcara v Cloud Books, 68 NY2d 553, 557; see also, People v Class, 67 NY2d 431, on remand from New York v Class, 475 US 106). If the rationale for the differing text is not material to the analysis, then we look further to see whether there are fundamental justice and fairness concerns of this State which are left unaddressed under prevailing Federal law and which are therefore warranted under the independent broader State protection (see, People v Alvarez, 70 NY2d 375).
Here, textual difference is not material to our analysis of Penal Law §40.15 (cf., Sharrock v Dell Buick-Cadillac, 45 NY2d 152 [noting that the State due process provision lacks express reference to a State action requirement]). As to the second tier of consideration, we are satisfied independently and on the ground that the Supreme Court rationale in the Leland, Mullaney and Patterson line of cases fully serves New York State’s interest in ensuring fundamental fairness in criminal proceedings affected by the insanity issue. We thus hold that defendant was afforded State due process because New York’s new scheme fits appropriately within sound precedents developed in cases analyzing pertinent statutory schemes under the Federal Constitution, which are also consistent with our own State’s fundamental jurisprudence, values and history in the criminal law.
*198 Our substantive analysis begins with the axiom that in a criminal prosecution due process imposes on the prosecution the unalterable burden of proving beyond a reasonable doubt every element of the crime charged (In re Winship, 397 US 358, 364; People v Patterson, 39 NY2d 288, affd. 432 US 197, supra). Defendant argues that the 1984 amendment violates the State constitutional due process guarantee in that it, in effect, transfers to defendant the legal responsibility of establishing innocence by disproving the culpable mental state — an essential element of the crime charged. The new statute does not do that.
Both the crime-defining statute and the affirmative defense one include consideration of and the production of evidence bearing on the defendant’s mental state and processes at the time of the crime. However, the core of the People’s proof and burden on the issue of criminal culpability established that defendant, at the time he fired the shots with respect to separate victims, "intended” his act, i.e., had a "conscious objective * * * to cause [the] result or to engage in [the] conduct” (Penal Law § 15.05 [1]), and acted "recklessly”, i.e., with "aware[ness of] and consciou[s] disregard] [of] a substantial and unjustifiable risk that [the] result will occur or that [the] circumstance[s] exist” (Penal Law § 15.05 [3]). This was established by eyewitness testimony of defendant’s actions and by his statements during and shortly after the shooting. Defendant, in turn, tried to establish by way of lay and expert testimony that he was "insane”, a precise legal concept not necessarily inconsistent with the culpable mental state of legal intent or recklessness.
We must caution, however, that if one is unable to appreciate the nature and consequences of the conduct (Penal Law § 40.15), it may be difficult to support a finding, at least in some cases, that the person had "conscious objective” to kill the victim (Penal Law § 15.05 [1]; § 125.25 [1]). For this reason, in a case where the concepts defined in those sections factually overlap with one another, it may be legally impossible in a given case for such a person to form a "conscious objective” to commit the crime. Then, the affirmative defense statute suffers the potential of impermissibly shifting to defendant the burden of disproving the formation of conscious objective to kill another human being, and the statute as applied could be unconstitutional.
Thus, in a particular case, this potentiality could sow *199 confusion and erroneous application of rules among juries with respect to the People’s burden of proving the element of intent and defendant’s burden of proving the affirmative defense of insanity (see, Martin v Ohio, 480 US 228, 236-240 [Powell, J., dissenting], supra; McQuillan, Insanity as Affirmative Defense — A Proposed Standard in New York, NYLJ, June 22, 1987, at 1, col 3). This can be reasonably safeguarded by jury instructions which should emphasize the People’s primary, ultimate, and nontransferable burden of proving all the elements of criminal intent beyond a reasonable doubt. Indeed, without transferring any burden to the defendant, the trial court should also, after the primary instructions, sequentially advise the jury that defendant bears a different burden on insanity, and that evidence of insanity relating to whether defendant knew what he was doing must be considered by the jury in its consideration of the People’s nontransferable satisfaction of its burden to prove intent beyond a reasonable doubt. In this bench trial, of course, the Trial Judge served as finder of fact, and the defendant does not argue that the court improperly intermixed the respective burdens of proof.
We note also that the presumption-of-sanity factor (see, People v Silver, 33 NY2d 475, supra) does not affect our interpretation of the new burden of proof statute for the affirmative defense so as to deprive defendant of due process. It has never relieved the People of the burden of establishing beyond a reasonable doubt defendant’s pertinent culpable mental state at the time the crime was committed, including those elements that may overlap with the affirmative defense of mental disease or defect. That was so before 1984 in Penal Law § 30.05 and it remains so afterwards in Penal Law § 40.15.
A point-by-point refutation of the dissenting opinion is not necessary save for these brief comments: The court has not shifted the burden as to any element of any crime charged; the court has not departed or wavered from fundamental principles of criminal jurisprudence either in an historical context, where there has been no such statute, or in the modern evolution and understanding of the insanity problem as it affects criminal responsibility; the court, of course, cannot accept the views of the dissenting opinion which fails to provide an analytic basis for deviating in this case from the modern and sound jurisprudence of the Supreme Court of the United States and of our own Legislature solely on indepen *200 dent State constitutional grounds; and we note finally that People v Schmidt (216 NY 324, 339), in full context and holding, supports the approach we have adopted in this case.
Finally, the term mental disease or defect may have diverse meanings in the field of mental health, but it is for the Legislature, not the courts, to define what constitutes legal insanity in a criminal law context and to ascribe, within constitutional limits, the proper burden of proof for this exculpatory principle (see, People v Patterson, 39 NY2d, supra, at 305-306 [Breitel, Ch. J., concurring], a,ffd 432 US 197). Similarly, it is for the Legislature to define what constitutes a crime in this State, not the judiciary. Under Penal Law § 125.25 (1), the burden on the prosecution is to prove that defendant intended to kill another human being and did kill that person or a third person. The modern statutory definition contains no explicit remnant of the common-law malice aforethought, or evil mind, and the prosecution burden is satisfied in this respect by proving that the defendant was capable of forming the conscious objective of committing the crime. On the other hand, the dissent’s argument that the concept of legal sanity is actually a merged element of the crime of murder is tantamount to saying that the Legislature is without power to define what constitutes legal insanity, and what constitutes murder. This is fundamentally contrary to well-settled criminal law principles (see, Penal Law § 1.05; People v Blanchard, 288 NY 145).
Defendant’s other points relate to issues which are either unpreserved, without merit or involve factual considerations beyond the scope of this court’s review.
Accordingly, the order of the Appellate Division should be affirmed.