*330 OPINION OF THE COURT
Gerald Sheindlin, J.
The defendant was indicted for sodomy in the second degree and other related crimes. During the nonjury trial before this court, the defense interposed the defense of not responsible by reason of mental disease or defect. This written decision supplements the oral decision and verdict rendered after trial.
FINDINGS OF FACT
Between August 1, 1992 and September 9, 1992, the defendant solicited two 12-year-old boys in an arcade in Coney Island and offered them $6 for oral sex. Thereafter, the defendant again sought out the two boys and offered each of them $10 if each would accompany him to his apartment in Bronx County for the purpose of engaging in oral sex. The boys agreed and the three traveled by train to the Bronx. The defendant engaged in oral sex with each of the boys. Pursuant to a police investigation, the defendant was identified in a lineup by each of the complainants, and subsequently arrested.
At trial, the defense proffered the testimony of Dr. Stephen Teich, an expert in forensic psychiatry, to support the defense of not responsible by reason of mental disease or defect. Dr. Teich testified that he interviewed the defendant three times and reviewed the defendant’s previous medical reports, including the report of Dr. Robert Berger, the prosecution’s expert witness.
Dr. Teich diagnosed the defendant as suffering from a depressive disorder NOS (Not Otherwise Specified), posttraumatic stress disorder, pedophilia and a personality disorder which contained aspects of antisocial personality and borderline personality. Dr. Teich classified the depression and post-traumatic stress disorder as mental diseases. He described the defendant’s 46-year history of same sex pedophilia as merely a symptom of the noted underlying diseases. He further noted that the DSM-IV classified pedophilia as a mental disorder and not a mental disease. Although the suffered depression and posttraumatic stress disorder were not of psychotic proportions, Dr. Teich believed that the depressive disorder could rise to the level of a psychosis. Most significantly, however, Dr. Teich did not find that the defendant’s depression to be of psychotic proportions at the time of the incident.
Dr. Teich believed that the defendant, at five years of age, *331 had been sexually traumatized by an uncle. This incident was revealed to the defendant some 40 years later in a nonspecific dream which was now being interpreted by Dr. Teich. According to Dr. Teich, this interpretation was supported by the defendant’s conduct as a baby when he repeatedly placed objects into his mouth and thereafter as a young man when he pursued prepubescent boys for the purpose of engaging in oral sex. Dr. Teich believed that the defendant was avoiding the larger adult penis and pubic hair that was reminiscent of his early trauma. Each sodomy of a young boy, Dr. Teich opined, is a result of the mental disease of depression which thereafter triggers the mental disease of posttraumatic stress syndrome. Dr. Teich was unaware of any studies discussing pedophilia as a symptom of the mental diseases of depression and posttraumatic stress disorder.
Dr. Teich conceded that the defendant knew and appreciated the nature of his conduct and that he knew it was against the law. However, he stated that the defendant possessed only a superficial knowledge that his conduct was wrong and had a diluted appreciation of its wrongfulness. Dr. Teich defined "appreciation” as a full emotional understanding that is greater than cognitive knowledge. Dr. Teich advanced the opinion that the defendant’s inability to "appreciate” was a product of mental illness, although not pedophilia. According to Dr. Teich, the defendant periodically loses cognitive functioning, thereby becoming unable to appreciate the consequences of his conduct and that it is wrong. Dr. Teich concluded that at the time of the incidents in question the defendant suffered from a combination of mental diseases which caused him to lack substantial capacity to appreciate the consequences of his conduct or that it was wrong.
The defense also introduced into evidence a massive number of medical records dating back to 1949 concerning the prior psychiatric examinations of the defendant. However, no other doctor in any hospital or jail facility offered the same analysis and diagnosis as Dr. Teich. In addition, the defense presented a 1992 study of pedophiles in support of Dr. Teich’s diagnosis of posttraumatic stress syndrome resulting in same sex pedophilia.[1]
On the prosecution’s rebuttal case, Dr. Robert Berger testified as an expert in forensic psychiatry. He twice met with the *332 defendant and reviewed all the medical records, including the reports of Dr. Teich. Dr. Berger noted that a mental disease is one which affects cognitive functions, behavior and emotions, which disease can improve or deteriorate. A mental defect, however, is a major psychiatric disturbance, primarily organic in nature, which cannot improve. Dr. Berger noted that he does not rely on nomenclature but instead focuses on the symptoms observed to determine whether the defendant’s mental capacity is legally impaired. It was noted that nonpsychotic diseases and defects could exacerbate and rise to the level of a psychosis and thereupon be the basis of an opinion of lack of legal responsibility. Dr. Berger diagnosed the defendant as suffering from pedophilia and character and personality disorders with antisocial, borderline and narcissistic elements. Dr. Berger opined that pedophilia was not a mental disease or defect because it does not impair one’s ability to reason or perceive reality. Further, he noted that pedophilia is not classified as a mental defect, as it is not considered an organic or a major psychiatric disturbance.
Dr. Berger offered the opinion that the defendant did "know or appreciate the nature and consequences of his conduct” and that it was wrong. Dr. Berger defined "appreciate” as a deeper or more complex understanding than knowing. He explained that the defendant both knows and deeply understands that his conduct causes an effect. As an example, Dr. Berger pointed to the medical records and his examination which noted that the defendant recognizes that a potential pattern of harm for future generations may be created if those he abused eventually abuse others. Additionally, the said evidence also illustrates that the defendant has an awareness which allows him to make choices and exercise judgments concerning his behavior. The medical evidence and statements of the defendant show that he chooses boys of 11 years of age or older because he believes that boys are less likely to notify the police than girls. Further, the evidence notes his awareness that the criminal offenses are of a lesser degree if he chooses children over the age of 11. The defendant knows that what he does is illegal but he chooses to ignore the law. Dr. Berger concluded that the medical records and his examination clearly demonstrates the defendant’s understanding of the consequences and wrongfulness of his conduct.
During the trial, evidence was also presented that the defendant was aware that he had previously been convicted of *333 numerous sexual offenses against children and that he had been sentenced to various terms of imprisonment for these convictions.
CONCLUSIONS OF LAW
This court finds that the People have proven the elements of two counts of sodomy in the second degree beyond a reasonable doubt. The court must thereafter consider the offered defense of not responsible by reason of mental disease or defect. Penal Law § 40.15 provides that
"In any prosecution for an offense, it is an affirmative defense that when the defendant engaged in the proscribed conduct, he lacked criminal responsibility by reason of mental disease or defect. Such lack of criminal responsibility means that at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity to know or appreciate either:
"1. The nature and consequences of such conduct; or
"2. That such conduct was wrong.”
The defendant must prove the defense by a preponderance of the evidence. (Penal Law § 25.00.)[2] The fact finder has the discretion to accept or reject the opinion of any expert and must determine whether the defendant is legally sane. (See, People v Wood, 12 NY2d 69, 76 [1962]; People v Robertson, 123 AD2d 795, 796 [2d Dept 1986].)
Penal Law § 40.15 involves a cognitive rather than a volitional test to determine criminal responsibility.[3] The defendant must prove that at the time of the sodomies (1) he suffered from a mental disease or defect and (2) that the mental disease or defect caused him to lack substantial capacity to know or appreciate the nature and consequences of his *334 conduct or that it was wrong.[4] The defendant need not establish the lack of both knowledge and appreciation; the lack of either may suffice. Whether the defendant proves either lack of knowledge or lack of appreciation, however, he must prove that it relates to both the nature and consequences of the conduct. "Know or appreciate” is in the disjunctive while "nature and consequences” is in the conjunctive. (Emphasis added.) Therefore, the defendant must demonstrate either his lack of substantial capacity to know the nature and consequences of his conduct or to appreciate the nature and consequences of his conduct.
To know something is to state it without necessarily understanding it, without depth and divorced from comprehension; knowledge plus appreciation is verbalization combined with deeper comprehension. (See, Interim Report, op. cit., at 18, 20.) As explained in the pattern jury instructions, " 'know or appreciate’ ” is "to mean knowing coupled with intellectual understanding.” (1 CJI[NY] 40.15, at 965R.) Addition of the phrase " 'or appreciate’ ” following " 'know’ ” was "designed to permit the defendant possessed of mere surface knowledge or cognition to be excused, and to require that he have same understanding of the legal and moral import of the conduct involved if he is to be held criminally responsible.” (See, Denzer and McQuillan, Practice Commentary, op. cit., at 49; see also, People v Adams, 26 NY2d 129, 135 [1970] [criminal responsibility only intended to be imposed on a defendant who has some understanding greater than the surface knowledge children have of propositions which they can state, but cannot understand].) "Nature” is defined in the pattern jury instructions as "the physical nature of the conduct” while " 'consequences’ ” is defined as "the potential for harm of the conduct.” (1 CJI[NY] 40.15, at 965S.)
Dr. Teich diagnosed two of the defendant’s illnesses as mental diseases, namely the depression and posttraumatic stress disorders, but defined pedophilia as a mental disorder. In both his testimony and report, Dr. Teich was extremely cautious in rendering his opinion. He suggested, without explanation or analysis, that these mental diseases and disor *335 ders caused the requisite lack of mental capacity. However, his opinion omitted an explanation of how any of these diseases or disorders caused the defendant’s lack of mental capacity.
Dr. Teich failed to note that the defendant lacked substantial capacity to know both the nature and consequences of his conduct. He testified that the defendant both knew and appreciated that he was engaging in oral sex. Dr. Teich noted that even when the defendant is depressed, he knows that he is engaging in oral sex and understands the physical nature of his actions. Although Dr. Teich found that the defendant lacked substantial capacity to appreciate the consequences of his behavior, Dr. Teich failed to conclude that the defendant lacked substantial capacity to appreciate the nature of his conduct.
Dr. Teich was unable to cite any studies or authorities to support his diagnosis or conclusions. In fact, no other doctor whose reports were introduced into evidence ever rendered the same diagnosis as Dr. Teich. The defense attempted to explain this omission by noting that the doctors who previously examined the defendant could not have been aware of a diagnosis of posttraumatic stress disorder because the syndrome was not widely known until after the Vietnam War. However, the 1992 study introduced in evidence by the defense in support of Dr. Teich’s conclusion actually undercuts their position. This study of pedophiles noted that many of the patients had suffered sexual abuse as children. However, the authors neither mentioned nor considered a diagnosis of post-traumatic stress disorder.[5] This study tends to significantly dilute the defense’s argument. However, it does tend to support the diagnosis and conclusion of Dr. Berger who rejected the diagnosis of depression and posttraumatic stress disorder. He found that the defendant suffered from same sex pedophilia and that this form of pedophilia caused the defendant to sodomize young boys. However, his pedophilia did not cause him to lack the requisite legal mental capacity. The defendant both knew and appreciated the nature and consequences of his conduct. He knew he was engaging in oral sex and understood that his illegal conduct could create future pedophiles. The defendant admitted remorse for being the origin of genera *336 tians of future pedophiles. He knew and understood that his conduct was illegal. However, he actively chose to disregard the law.[6]
Even if the court chose to accept Dr. Teich’s testimony in its entirety, without the persuasive contrasting testimony of Dr. Berger, the defendant has nonetheless failed to establish the offered defense. Dr. Teich testified that the defendant knew "the nature and consequences of his conduct” but that he lacked "substantial capacity to appreciate” only the consequences of his conduct. However, the language of the statute is in the conjunctive. Dr. Teich’s testimony, therefore, fails to establish both prongs of the statutory criteria. In contrast, Dr. Berger found that the defendant both knew and appreciated the nature and consequences of his conduct. Significantly, as previously noted, Dr. Berger’s diagnosis and opinion are supported by the documentary evidence introduced by the defense.
Having considered all of the documentary evidence, the reports of both forensic experts and all of the testimony, this court finds that the defendant has failed to meet his burden by a preponderance of the evidence. Whatever diseases the defendant suffers from, none are of such proportion as to cause the defendant to lack substantial capacity to know or appreciate the nature and consequences of his conduct or that it was wrong. Although the defendant clearly suffers from pedophilia, it does not cause the requisite mental incapacity.
This court finds that the People have proven the defendant’s guilt beyond a reasonable doubt. Further, the court concludes that the defendant both knew and appreciated the nature and consequences of his conduct and that it was wrong. Accordingly, the defense of lack of legal responsibility by reason of mental disease or defect is rejected. Therefore, the defendant is found guilty of two counts of sodomy in the second degree.

. See, Meyer, Depo Provera Treatment for Sex Offending Behavior: An Evaluation of Outcome, 20 Bull Am Acad Psychiatry & L 249 (1992).

. The affirmative nature of the defense does not impermissibly shift the burden of proof. (People v Kohl, 72 NY2d 191, 193-194 [1988].)

. A cognitive test focuses on the defendant’s awareness of his conduct while a volitional test involves the ability to conform conduct, i.e., irresistible impulse. (Compare, State v Rodriguez, 67 Haw 70, 679 P2d 615, 617 [1984], cert denied 469 US 1078 [1984] [statute on insanity requires proof of defendant’s substantial incapacity to appreciate wrongfulness of conduct or to conform conduct to the requirements of the law], with People v Hakner, 34 NY2d 822, 823 [1974] [New York’s purely cognitive statute on insanity specifically rejects a defendant’s inability to conform conduct as a basis for relief of criminal responsibility]; see also, Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law former § 30.05, at 48-49 [1967].)

. The defendant need not be totally incapacitated. This is a change from the former Penal Law provision which provided that only a totally incapacitated person could be excused from criminal liability. (See, former Penal Law § 1120 [1944]; see also, Interim Report of Temporary Commn on Rev of Penal Law and Criminal Code, 1963 NY Legis Doc No. 8, at 19-21; People v Wofford, 59 AD2d 562, 567 [2d Dept 1977], affd 46 NY2d 962 [1979].)

. Neither side requested a Frye hearing on this issue, which appears to be novel. (See, People v Burton, 153 Misc 2d 681 [Sup Ct, Bronx County 1992].)

. See, supra, at 332.