## COMMONWEALTH *vs.* NICHOLE FERNANDES.

Middlesex. January 10, 2002. - May 3, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, SOSMAN, & CORDY, JJ.

*Homicide. Practice, Criminal,* Capital case, Argument by prosecutor. *Witness,* Expert. *Evidence,* Insanity. *Insanity.*

A criminal defendant failed to demonstrate that the prosecutor, during closing argument at trial, misstated the evidence or improperly disparaged either defense counsel or the defendant's expert witness. [674-675]

No reason appeared on the record of a trial on an indictment for murder in the first degree for this court to direct the entry of a verdict of not guilty by reason of insanity, to reduce the verdict, or to grant a new trial pursuant to G. L. c. 278, § 33E. [675-676]

INDICTMENTS found and returned in the Superior Court Department on July 3, 1997.

The cases were tried before *Charles M. Grabau,* J.

*Dana Alan Curhan* for the defendant.

*Kevin J. Curtin,* Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. Following nine days of trial, a jury rejected the defendant's claim that she lacked criminal responsibility and convicted her of murder in the first degree on theories of deliberate premeditation and extreme atrocity or cruelty. The jury also convicted the defendant of kidnapping, arson of a dwelling,[1] and five counts of assault and battery by means of a dangerous weapon.[2] On appeal, the defendant contends that the prosecutor

---

[1]Following the jury's verdict, the trial judge allowed the defendant's renewed motion for a required finding of not guilty on the indictment charging arson of a dwelling.

[2]The judge imposed the mandatory sentence of life imprisonment on the conviction of murder in the first degree, sentenced the defendant to concurrent terms of from nine to ten years in State prison on the kidnapping and one of the assault and battery convictions, and ordered those sentences to take effect from and after the expiration of the sentence imposed on the murder

made improper remarks during his closing argument about defense counsel and about the defendant's expert witness. The defendant also requests that we direct the entry of a verdict of not guilty by reason of insanity, reduce the verdict to manslaughter, or order a new trial pursuant to our power under G. L. c. 278, § 33E. We affirm the convictions and decline to grant relief under G. L. c. 278, § 33E.

1. *Facts.* The victim was a nineteen year old woman. The jury could have found that, on the night of March 25-26, 1997, the defendant, after several days of looking for the victim and announcing that she would kill her if she found her, lured the victim from a homeless shelter in Boston to an abandoned trailer near the railroad yard on the Cambridge-Boston line. There, the defendant and two accomplices tied up the victim and, after setting the victim's hair on fire, repeatedly and brutally tortured and assaulted her using their fists, a metal pole, the thorned stem of a rosebush, scissors, and a sledgehammer. Evidence indicated that the assailants had stomped on the victim's face while she was still alive and that the victim begged her assailants not to kill her, to no avail. Medical experts testified concerning the smashing of the victim's skull and face in three separate areas, fracturing all the bones of the victim's forehead, eye orbits, and cheek bones. After ensuring that the victim was dead, the defendant set fire to the trailer and fled.

The defendant and her accomplices then stole several automobiles to create an alibi in case the police should question them concerning their whereabouts that evening. There was other evidence that the defendant systematically and coherently took steps to conceal her actions that evening and during the ensuing days.

On March 28, 1997, the police located the defendant, for whom they had been looking, believing initially that she might be the victim,[3] and spoke with her at a Boston coffee shop. The defendant told the police that she had not been to the trailer

conviction. He ordered the remaining four assault and battery convictions to be placed on file with the defendant's consent, and they are not before the court on appeal. See *Commonwealth* v. *McCravy*, 430 Mass. 758, 759 n.1 (2000).

[3]The defendant had been known to frequent and occasionally occupy the trailer in which the victim was found. The victim was burned beyond

recently. She also volunteered that, on the night of the murder, she had been up all night stealing automobiles.

After further investigation, the police took the defendant into custody at 11:40 P.M., on April 6, 1997. The defendant was given Miranda warnings; at the time she spoke with police she appeared sober, rational, and lucid. The defendant confessed that she had killed the victim, describing in detail the manner and circumstances of the killing and her actions both before and after the killing. With the defendant's consent, and after the police had repeated the Miranda warnings, a tape recording was made of her confession. It was consistent with the voluminous physical and forensic evidence introduced by the Commonwealth, and with statements the defendant made to others in the wake of the murder before her arrest.

At trial the defense was a lack of criminal responsibility based on the defendant's drug abuse, mental illness, and history of childhood abuse by her parents. Defense counsel vigorously cross-examined the prosecution witnesses in support of the theory that the defendant was given to fantasy, had problems with reality, and frequently told lies. The jury also heard extensive evidence of the defendant's drug and alcohol use during the month prior to the killing.

Dr. Keith Ablow, a psychiatrist, testified for the defense and opined that the defendant lacked the substantial capacity to conform her conduct to the requirements of law, and that she lacked the capacity to waive her Miranda rights. Dr. Ablow based his opinion on his diagnosis that the defendant suffers from chronic dissociative disorder, a fractured view of reality, substance abuse, and antisocial personality disorder. He also testified that the defendant suffered from auditory and visual hallucinations and that the defendant often made up stories and took blame for things for which she was not responsible as a form of escapism and empowerment — i.e., the defendant proved she existed through the reaction of others.

The prosecutor called as a rebuttal witness Dr. Malcolm P. Rogers, a psychiatrist and an expert in forensic psychiatry. Dr. Rogers opined that the defendant was criminally responsible

recognition. At the time of the defendant's confession, discussed *infra*, the victim had not been positively identified.

and that she had the ability to premeditate deliberately and form the specific intent to kill. Dr. Rogers testified that, in his opinion, the defendant suffered from an antisocial personality disorder and substance abuse disorder, but that there was no evidence that she suffered from delusions, hallucinations, or any psychotic mental disorder.

2. *The prosecutor's closing argument.* The defendant contends that in his closing argument the prosecutor misstated the evidence and improperly disparaged both defense counsel and the defendant's expert witness, Dr. Ablow. There was no objection at trial to any of the statements the defendant now challenges. We consider whether there was any error and, if so, whether a substantial likelihood of a miscarriage of justice has occurred. *Commonwealth* v. *Cyr*, 433 Mass. 617, 626 (2001).

Our review of the closing arguments of both the prosecutor and defense counsel persuades us that the prosecutor's comments on the manner in which defense counsel marshaled the evidence during her closing argument were not improper. "Within reason, prosecutors may be critical of the tactics utilized by trial counsel in defending a case." *Commonwealth* v. *Awad*, 47 Mass. App. Ct. 139, 141 (1999). See *Commonwealth* v. *Borodine*, 371 Mass. 1, 11 (1976), cert. denied, 429 U.S. 1049 (1977). The prosecutor twice responded to the characterization of the evidence in defense counsel's closing argument. He also commented on defense counsel's offering her personal opinion to the jury, for which the judge sua sponte had admonished defense counsel during her closing argument. This is not a case in which an attorney disparaged defense counsel personally, or characterized defense counsel as obscuring the truth or intentionally misleading the jury. Cf. *Clark* v. *Clark*, 47 Mass. App. Ct. 737, 744 n.7 (1999) (characterizing opposing counsel as "shyster" and "bald-faced liar").

The defendant also claims that the prosecutor disparaged the defendant's expert by referring to him as "Keith Ablow," "Mr. Ablow," or "that fiction novelist," rather than as "Dr. Ablow." These were not improper remarks on Dr. Ablow's credibility. The evidence indicated that Dr. Ablow was, in fact, a novelist, and both defense counsel and the prosecutor cross-examined the expert witnesses on their extracurricular writings. The prosecu-

tor did not express his personal belief in the credibility of the witness or intimate that he had any knowledge outside the evidence. *Commonwealth* v. *Ciampa*, 406 Mass. 257, 265 (1989).

Nor did the prosecutor improperly argue to the jury about Dr. Ablow's testimony concerning the circumstances of his retention as an expert witness. On cross-examination the prosecutor attempted to establish Dr. Ablow's bias because he had been retained by the defendant. Dr. Ablow initially responded to the prosecutor's questions by testifying that "the Commonwealth" had paid him for his services; it took several questions from the prosecutor and an instruction from the judge that Dr. Ablow not elaborate on his answers[4] before the witness confirmed that he had been retained by the defendant, and was not beholden to or endorsed by the Commonwealth in any respect. The prosecutor's closing argument to the jury that Dr. Ablow was being coy in his testimony in an attempt to exaggerate the independence of his judgment was supported by the evidence and was within the realm of permissible argument.

There was also no error in the prosecutor's argument that the Commonwealth's expert was "objective" based on the evidence that Dr. Rogers had testified in the past for both the Commonwealth and defendants, and that within the year preceding the trial had concluded in three instances that a defendant was not criminally responsible for his actions. Both the defendant and the prosecutor questioned the credibility of the opposing party's expert witness, and it was proper for the prosecutor to argue why the Commonwealth's expert should be believed, based on the evidence. *Commonwealth* v. *Andrews*, 403 Mass. 441, 457 (1988).

3. *Review under G. L. c. 278, § 33E.* The defendant requests that we direct the entry of a verdict of not guilty by reason of insanity, reduce the verdict to manslaughter, or order a new trial pursuant to our power under G. L. c. 278, § 33E. She points to the violence, abuse, and neglect that she suffered during her childhood, her history of auditory and visual hallucinations, and her capacity to engage in fantasy and embellish facts beyond

---

[4]The judge was rightly concerned about the jury's hearing testimony that might suggest the defendant's indigence.

reality to argue that there is a question whether she in fact played some "lesser" role in the murderous events, despite her confession to the police. For these same reasons, she suggests that there is a live question whether she was able to appreciate the wrongfulness of her conduct, whatever her role.

We recently have noted that we are aware of no case in which we have ordered the entry of a judgment of not guilty by reason of the defendant's lack of criminal responsibility after a jury has rejected such a defense. See *Commonwealth* v. *Rosenthal*, 432 Mass. 124, 130 (2000); *Commonwealth* v. *Keita*, 429 Mass. 843, 848 (1999). The cases in which we have ordered a new trial under § 33E where the issue at trial was the defendant's lack of criminal responsibility involved circumstances different from those present here. See, e.g., *Commonwealth* v. *Mutina*, 366 Mass. 810, 816 (1975) (ordering new trial where prosecution adduced no affirmative evidence of defendant's sanity and defendant presented "very strong evidence of his lack of criminal responsibility"); *Commonwealth* v. *Cox*, 327 Mass. 609, 615 (1951) (same). In this case, the issue of the defendant's criminal responsibility was fairly tested by zealous advocacy by both the prosecutor and defense counsel. Each called an expert witness to opine on the defendant's state of mind at the time of the killing. Each expert was thoroughly cross-examined. See *Commonwealth* v. *Strother*, 375 Mass. 462, 470-471 (1978). The jury could accept the opinion of the Commonwealth's expert and reject the opinion of the defendant's expert; their verdict is consistent with the evidence that the defendant was criminally responsible when she killed the victim and that the killing was committed with deliberate premeditation and extreme atrocity or cruelty.

We have considered the entire record pursuant to our obligation under G. L. c. 278, § 33E, and decline to substitute our view for the decision reached by the jury by directing the entry of a verdict of not guilty by reason of insanity or reducing the verdict to manslaughter. Nor do we see any basis on which to order a new trial.

*Judgments affirmed.*