NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1189

COMMONWEALTH

vs.

JACOB A. SCOTT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted of operating a motor vehicle under the influence of intoxicating liquor (OUI), second offense,[1] the defendant appeals.  He argues that during the prosecutor's closing argument she referred to facts not in evidence when she stated that the defendant was not charged with resisting arrest and that the defendant had told a State police trooper that he had "nothing to drink," and that she shifted the burden of proof by arguing, "why would someone say they had nothing to drink . . . [u]sually it's because they've had too much to drink."  The defendant further argues that the judge should have given, sua sponte, a jury instruction clarifying that the trooper's

---

[1] After a jury trial on the underlying charge, the defendant entered a guilty plea on the second offense portion.  The defendant was found not responsible for speeding and marked lanes civil infractions.

testimony about the defendant's performance on field sobriety tests (FSTs) was lay opinion and not expert opinion. We affirm.

Background. At approximately 2 A.M. on March 7, 2020, on Route 2 in Lancaster, State police Trooper Jeffrey Murray saw a blue Honda Civic pass another vehicle at a speed approximately twenty miles per hour more than the posted speed limit. The Honda then crossed over into the left lane and back into the right lane, then swerved within its own lane. Trooper Murray activated his blue lights and the Honda pulled over into the breakdown lane.

Trooper Murray approached the Honda and asked the driver, the defendant, for his license and registration. Instead of providing those documents immediately, the defendant asked why he had been stopped. After Trooper Murray informed him of the speeding and marked lanes violations, the defendant provided the documents "sluggish[ly]." The defendant stated he was coming from a party with his friend in the passenger seat, who the trooper noted was "clearly intoxicated."

When asked whether he had been drinking that evening, the defendant replied unresponsively that he was "just trying to get his friend home." The defendant's eyes were glassy and bloodshot and his speech was slurred. At Trooper Murray's request, the defendant got out of the Honda to perform FSTs. As

2

he got out of the car, the defendant was unsteady on his feet. The defendant did not object to performing the FSTs.

Before Trooper Murray finished instructing him on the nine-step walk-and-turn, the defendant began performing that FST. While doing so, the defendant stepped off the line, left a gap greater than two inches between his heel and toe on some steps, and improperly turned in a military-style about-face movement. At the turn, the defendant asked the trooper if he had completed nine steps. When Trooper Murray instructed the defendant how to perform the one-legged stand test, the defendant told Trooper Murray to be more realistic and "that was something that normal people really can't do." The defendant then performed that FST, but was becoming "increasingly more agitated." As to the alphabet test, the defendant performed it with slurred speech. Lastly, Trooper Murray asked the defendant to count backwards from fifty-seven to forty-two. The defendant counted backwards from fifty-seven to forty-six, paused for a moment, and continued to count down to forty-two.

For about ten minutes, the defendant and Trooper Murray waited for another trooper to arrive. During this time, the defendant became more agitated and questioned why Trooper Murray stopped him in the first place, why he had do FSTs, and what proof Trooper Murray had to conduct the FSTs. The defendant spoke over Trooper Murray and interrupted when Trooper Murray

attempted to answer. During those ten minutes, the defendant's demeanor shifted back and forth from "very aggressive" to "apologetic." Trooper Murray formed the opinion that the defendant was intoxicated and decided to place the defendant under arrest.

When Trooper Murray attempted to place the defendant in handcuffs, the defendant stiffened his body and put his hands down by his sides. After a brief struggle, the trooper placed the defendant in the rear compartment of a cruiser. During the booking process, the defendant shouted over Trooper Murray numerous times and did not give direct answers to questions.

The jury convicted the defendant of OUI. This appeal followed.

Discussion. 1. Prosecutor's closing argument. The defendant argues that the prosecutor's closing argument was improper in two respects, and that the cumulative effect of those errors required the judge to grant defense counsel's request for a mistrial. Because the defendant timely objected to the prosecutor's closing argument, "we evaluate whether the defendant was prejudiced thereby, considering the remarks in the context of the entire argument, the trial testimony, and the judge's instructions to the jury." Commonwealth v. Beaudry, 445 Mass. 577, 584 (2005). In doing so, we first determine whether there was an error, and if so, whether that error was

4

prejudicial. See Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

First, the defendant contends that the prosecutor injected "bad character" information of "uncharged conduct" not in evidence when she argued that the defendant "wasn't charged with resisting arrest." A prosecutor may use closing argument to comment on the trial tactics of the defense and to respond to the defendant's closing argument. See Commonwealth v. Chambers, 93 Mass. App. Ct. 806, 822 (2018); Commonwealth v. Fernandes, 436 Mass. 671, 674 (2002) (prosecutor may use closing argument to respond to defense counsel's characterization of evidence). The prosecutor's reference to resisting arrest came in response to the defense closing, in which counsel emphasized that the defendant "provid[ed] the documents without argument or resistance," and "did not argue or resist the trooper," and the trooper's testimony that the defendant struggled while being arrested was not sufficient evidence to convict him of OUI. This was a proper response to defense counsel's characterization of the evidence and was not error. See Commonwealth v. Kozubal, 488 Mass. 575, 591 (2021) (prosecutor's argument that "[d]efendant says that he wasn't her teacher" proper response to defense closing). To the extent that the prosecutor's comment could be interpreted to inform the jury of the existence of the

5

crime of resisting arrest, the defendant was not prejudiced, as the defendant was not charged with or convicted of that crime.

Second, the defendant contends that the prosecutor argued facts not in evidence and shifted the burden of proof when she argued, "So, where is [the odor of alcohol] coming from because the [d]efendant said he had nothing to drink.  And, ladies and gentlemen, I would suggest to you why would someone say they had nothing to drink or why do people lie about how much they've had to drink?  Usually it's because they've had too much to drink." The Commonwealth concedes that the prosecutor misstated the evidence when she erroneously claimed that there was evidence that the defendant said he had nothing to drink.

"Prosecutors must limit the scope of their closing arguments to facts in evidence and the fair inferences that may be drawn therefrom" (citation omitted).  Commonwealth v. Valentin, 474 Mass. 301, 309 (2016).  Here, the evidence was that the trooper asked the defendant whether he had been drinking, and that the defendant replied that he was "just trying to get his friend home."  There was no testimony that the defendant denied drinking or that he stated he had "nothing to drink," as the prosecutor claimed in closing.  We agree that the prosecutor misstated the evidence.

"Whether a misstatement of the evidence in a prosecutor's closing argument results in reversible error depends on

6

consideration of four factors: '(1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions.'" Commonwealth v. West, 487 Mass. 794, 809 (2021), quoting Commonwealth v. Reyes, 483 Mass. 65, 77 (2019).

The prosecutor's inaccurate statement in closing that the defendant had said he had "nothing to drink," although improper, was not unduly prejudicial, as it might have been had the prosecutor argued without basis in the evidence that the defendant admitted drinking alcohol. Further, after defense counsel objected, the judge instructed the jury that closing arguments were not evidence, the jury's memory of the testimony controlled, and the Commonwealth bore the burden of proof. The Commonwealth presented a strong case, and while there was no evidence that the defendant told the trooper that he had "nothing to drink," he did evade the trooper's question. Cf. Commonwealth v. Collins, 11 Mass. App. Ct. 583, 586 (1981) (defendant's evasive statements regarding access to automobile trunk evidenced constructive possession of firearm inside). We conclude that the prosecutor's misstatement of the evidence did not prejudice the defendant or shift the burden of proof.

7

Nor did the prosecutor improperly inject any personal opinion by suggesting to the jury that someone who denies drinking anything or who lies about how much they had to drink would usually do so "because they've had too much to drink." The prosecutor was not stating a personal opinion but merely asking the jury to draw an inference.

2. Lack of jury instruction that trooper's opinion about field sobriety tests was not expert opinion. The defendant argues that a substantial risk of a miscarriage of justice arose when the judge did not instruct the jury that the trooper's testimony about the defendant's performance on FSTs was lay and not expert opinion. In doing so, the defendant relies on a suggestion in the dissenting opinion in Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 399 (2017) (Agnes, J., dissenting).

At trial, when the prosecutor asked if the trooper had formed an opinion about the defendant's sobriety, the trooper replied that he "believed [the defendant] was intoxicated." That was proper. See Commonwealth v. Jones, 464 Mass. 16, 17 n.1 (2012). But the trooper did not opine on whether the defendant failed any of the FSTs. Rather, he simply described what he saw the defendant do. From the trooper's testimony, defense counsel argued in closing that the defendant "passed" some of the FSTs.

8

The defendant did not ask the judge to instruct the jury that the trooper's testimony about the FSTs was lay and not expert opinion. If a police officer's testimony includes an opinion about FSTs, and it may not be clear to a jury whether that opinion qualifies as that of an expert, the judge may instruct the jury that the testimony is lay opinion. See Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 324 (2023). See also Criminal Model Jury Instructions for Use in the District Court, 5.310 supplemental instruction 3 (2023). However, "a judge need not give such an instruction where it was not requested." Commonwealth v. Waite, 102 Mass. App. Ct. 578, 582 (2023).

The defendant here did not request such an instruction, and so there was no error in not giving it, and no substantial risk of a miscarriage of justice arose.

Judgment affirmed.

By the Court (Sacks, Grant & Smyth, JJ.[2]),

Joseph F. Stanton

Clerk

Entered: August 10, 2023.

---

[2] The panelists are listed in order of seniority.