OPINION OF THE COURT
Joseph L. Latwin, J.
This case tests the limits of the new portable electronic device law and the wisdom of the legislature in crafting it.
Defendant was issued a simplified traffic information (STI) charging him with violating Vehicle and Traffic Law § 1225-d by operating a motor vehicle while using a portable electronic device while on Interstate 95 in the City of Rye. A trial was held. At trial, the state trooper who issued the STI testified that he was on routine patrol in the left northbound lane of 1-95 when he observed the defendant, driving in the northbound center lane, holding a cell phone 8 to 12 inches from his head. The trooper could not see what the defendant was doing with the cell phone nor could he see what was on the cell phone’s screen. Defendant sought to introduce his cell phone bills which, concededly, would have not shown a call or text being made or sent at the time the STI was issued.* Defendant testified that he had a cell phone, had made three calls on his trip but had used the Bluetooth feature of his car. He also said he used his car’s built-in GPS to navigate from an unfamiliar area in Brooklyn to more familiar routes to his home. In essence, the issue here is whether merely holding a portable electronic device while operating a motor vehicle is sufficient to constitute a violation.
Vehicle and Traffic Law § 1225-d was enacted by Laws of 2009, chapter 403, § 4 (eff Nov. 1, 2009). The relevant sections have not changed in any manner relevant to this case. The bill passed the Assembly 146 to 0 and passed the Senate 57 to 1. The sole “Nay” vote was based upon objection to a different portion of the law. In his Approval Memorandum, Governor Paterson said,
“Research has established that the use of portable electronic devices while driving, and text messaging, in particular is extremely dangerous. For example, a recent study conducted by the Virginia Tech Transportation Institute found that when truck drivers *271 sent text messages while driving, their collision risk was 23 times greater [than] when not text messaging. Another study from the University of Utah found that college students showed an eight fold greater crash risk when text messaging. Seventeen states have passed laws banning text messaging while driving, including California, Connecticut, Illinois, and New Jersey. In short, this prohibition will make our roads safer.” (Governor’s Approval Mem, Bill Jacket, L 2009, ch 403 at 5.)
The Assembly’s Memorandum in Support of the legislation said
“the use of portable electronic devices, such as hand-held mobile telephones and personal digital assistants (PDAs), while operating a motor vehicle have become a distraction, and therefore a danger and threat to public safety. Crashes due to driver inattention or distraction are on the rise in the United States and they have resulted in more fatalities. The National Highway Traffic Safety Administration estimates that 25 percent of all police-reported crashes involve some form of driver inattention. This bill would help limit driver distraction and inattention by prohibiting any operator in the state from using any portable electronic device while driving, and in turn, enhancing highway safety.” (Assembly Mem in Support, Bill Jacket, L 2009, ch 403 at 14.)
In support of the 2011 amendment making Vehicle and Traffic Law § 1225-d a primary violation, AAA New York State stated:
“Texting while driving presents a clear and persistent danger to all other drivers, pedestrians and bicyclists on the road. Studies show that on average, a texting driver takes his or her eyes off the road for about five seconds to read or send a message, more than doubling the driver’s risk of a crash. At highway speeds, that’s long enough to cover the length of a football field. Research also shows that texting reduces reaction time by more than one third and steering control by more than 90 percent. In fact, a recent study from the University of Utah concludes that it’s more dangerous to be texting than it is to be drunk while driving.” (AAA New York State’s Mem in Support, Bill Jacket, L 2011, ch 109 at 31.)
With that background, the legislature adopted the following relevant statutory language:
*272 “§ 1225-d. Use of portable electronic devices “1. Except as otherwise provided in this section, no person shall operate a motor vehicle while using any portable electronic device while such vehicle is in motion ....
“2. . . .
“(b) ‘Using’ shall mean holding a portable electronic device while viewing, taking or transmitting images, playing games, or, for the purpose of present or future communication: performing a command or request to access a world wide web page, composing, sending, reading, viewing, accessing, browsing, transmitting, saving or retrieving e-mail, text messages, instant messages, or other electronic data. . . .
“4. A person who holds a portable electronic device in a conspicuous manner while operating a motor vehicle ... is presumed to be using such device .... The presumption established by this subdivision is rebuttable by evidence tending to show that the operator was not using the device within the meaning of this section.” (Vehicle and Traffic Law § 1225-d.)
The degree of the seriousness of a violation of this section can be measured by the DMV recently raising the points assessed for its violation to five points — the same as a violation for passing a stopped school bus (Vehicle and Traffic Law § 1174 [a]) or a cell phone violation (Vehicle and Traffic Law § 1225-c [2] [a]), and more than for a speed of 11 to 20 miles per hour over the speed limit (Vehicle and Traffic Law § 1180 [d]). It is also deemed a “high-point driving violation” under 15 NYCRR 132.1 (c) and 136.5 (a) (2) (iii) that can trigger a lifetime review of a driver’s license and a lifetime revocation upon any revocation where there has been a serious driving offense within the past 25 years. (See 15 NYCRR 132.2.)
The case law is scarce and of little guidance. In People v Riexinger (40 Misc 3d 623 [Lockport Just Ct 2013]), the Justice Court held that Vehicle and Traffic Law § 1225-d does not encompass using a cell phone as a clock or watch. The court’s reasoning was questionable in arguing the legislature could not have contemplated such a result since holding a cell phone to check the time was no worse than holding a pocket watch. There is no support for this position in the language of the statute. In fact, reading or viewing the time stored as electronic data on a *273 cell phone is specifically listed as constituting “using” under Vehicle and Traffic Law § 1225-d (2) (b).
A court cannot by implication supply in a statute a provision which is reasonable to suppose the legislature intended intentionally to omit. When it is urged that a particular statute should be construed to cover a matter not expressly mentioned in the act, the courts frequently assert that, if the legislature had intended the statute to include the matter in question, it would have been easy for it to have said so and to have expressly included it. The failure of the legislature to include a matter within the scope of the act indicates that its exclusion was intended, and the court refuses to insert the matter in the statute on the ground that it has no power to make such judicial legislation. (People v Heil, 28 Misc 3d 215, 221 n 2 [Rye City Ct 2010].)
In People v Goldstein (36 Misc 3d 1214[A], 2012 NY Slip Op 51321[U] [Kings Point Just Ct 2012]), the Justice Court skirted the issue by finding no proof that the defendant was utilizing the handheld device while the vehicle was in motion. The arresting officer testified that he observed that the defendant had a cell phone in his hand while he was driving. The officer testified that he saw the defendant viewing the phone, looking down at his phone while “driving” and that the defendant was not talking on the phone. The defendant testified that he was stopped at the traffic light at the intersection and saw that his Bluetooth wasn’t on. He then turned it on. He stated that he wasn’t texting and driving.
The court found that there was no testimony by the officer that indicated that the defendant was looking down at the telephone or operating the phone in any manner after the defendant began driving when the light turned green when the vehicle would have been in motion. The court found that the defendant was operating his motor vehicle and was driving at the time the ticket was issued, however, the testimony of the officer concerned what he observed while the defendant’s car was stopped at the red traffic light and not while defendant’s vehicle was in motion. There was no testimony by the officer that indicated that he observed the defendant looking down at the handheld device or texting while the vehicle was in motion. The Goldstein court addressed the requirement that the use be while the vehicle was in motion, not whether or not there was a use. It found there was a use before the vehicle was in motion.
Here, it is undisputed that the defendant held a cell phone while the vehicle was in motion. Thus, Goldstein is inapposite.
*274 “As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof.” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998].) “[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning” (Pultz v Economakis, 10 NY3d 542, 547 [2008]).
The language of Vehicle and Traffic Law § 1225-d is straightforward. The operation of a motor vehicle while using any portable electronic device while such vehicle is in motion is prohibited. A “[p]ortable electronic device” includes a handheld mobile telephone. (Vehicle and Traffic Law §§ 1225-d [2] [a]; 1225-c.) “Using” means holding a portable electronic device while doing any of the listed activities. (Vehicle and Traffic Law § 1225-d [2] [b].) “A person who holds a portable electronic device in a conspicuous manner while operating a motor vehicle ... is presumed to be using such device” (Vehicle and Traffic Law § 1225-d [4]). That presumption is rebuttable by evidence tending to show that the operator was not using the device.
Here, the defendant was holding a cell phone, a portable electronic device, while the vehicle was in motion. The holding of the cell phone creates a presumption of use. The presumption of use is colored by the lack of testimony of the officer about what, if anything, defendant was doing with the phone and defendant’s denial of use and the stipulated lack of any record of use on the phone bill.
The court can speculate why the presumption was created given how difficult it would be for a police officer to see what particular activity the driver was performing with a portable electronic device while both the police officer and the driver are in separate moving cars, often distant from each other, especially when the police officer has to pay attention to driving his/ her own vehicle at the same time as observing the defendant. On the other hand, had the legislature wished to prohibit the mere holding of a cell phone while driving, it could have said so. It didn’t. Instead, it created an evidentiary seesaw by creating the presumption and permitting the defendant to rebut that presumption.
The usual effect of a presumption is to place the burden upon the adversary to come forward with evidence to rebut the presumption — to negate the existence of the presumed fact. Once the adversary introduces sufficient evidence to the contrary, the presumption disappears. (See e.g. People v Langan, *275 303 NY 474, 480 [1952].) The presumption is overcome when the adversary produces “substantial” evidence contrary to the presumption. Some presumptions require a higher degree of rebuttal evidence. (See e.g. Stewart v Town of Hempstead, 204 AD2d 431, 431 [2d Dept 1994] [Vehicle and Traffic Law § 388 (1) imputes to the owner of a motor vehicle the negligence of one who operates it with the owner’s permission. That section gives rise to a rebuttable presumption that the vehicle is being operated with the owner’s consent. The presumption of consent, moreover, has been characterized as “very strong” and continues until there is “substantial evidence to the contrary”]; People v Drachenberg, 49 Misc 2d 791 [Oakfield Special Sessions Ct 1966] [presumption that village board of trustees which enacted automobile speed ordinance would see that speed signs were posted was not overcome in speeding prosecution of motorist by provision of Vehicle and Traffic Law that no local speed ordinance shall be effective until signs or markings giving notice thereof are posted]; People v Kohl, 72 NY2d 191 [1988] [The prosecution enjoys the presumption that all persons are sane. A defendant bears some burden of coming forward with evidence rebutting the presumption of sanity. The presumption is rebuttable. The slightest creditable attack even non-psychiatric proof alone might overcome the presumption and sustain a verdict of acquittal].)
Whether or not the presumption has been overcome is a question for the trial judge. The court finds that the defendant has failed to rebut the presumption. The defendant’s credible testimony that he did not make a call or send a text near the time he was stopped and the lack of a record of such on the phone bills was not sufficient to overcome the presumption.
The legislature could have avoided this situation by making the merely holding of a portable electronic device a violation. It chose not to do so. The legislature could have not enacted the presumption and put the burden on the police to prove actual use. It didn’t. Instead, the legislature created the presumption, leaving to the courts the weighing of the evidence. As the Gold-stein court noted, what is the difference between checking the time on a cell phone or a pocket watch? Furthermore, how much more dangerous is it to push a button on a cell phone to activate a call than it is to push a button on the dashboard to do the same thing? Certainly technology in vehicles will soon make it possible, if it does not already exist, to initiate, send and read emails and text messages by voice commands without the need *276 to touch a portable electronic device. A driver can now ask Siri to place a call and then conduct the call through the Bluetooth in the car. The progress of technology will vitiate the impact of Vehicle and Traffic Law § 1225-d.

 The lack of any record of any contemporaneous text or phone call is of little import since Vehicle and Traffic Law § 1225-d (2) (b) makes it a violation to hold a portable electronic device while viewing, taking or transmitting images, playing games, or for the purpose of present or future communication. One could type a text but not send it contemporaneously and it would still constitute “using” a portable electronic device.