NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11996

COMMONWEALTH  vs.  RICHARD LAWSON.


Suffolk.     March 7, 2016. - October 28, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.[1]



Insanity.  Mental Health.  Evidence, Sanity, Inference,
     Presumptions and burden of proof, Argument by prosecutor.
     Practice, Criminal, Presumptions and burden of proof,
     Required finding, Argument by prosecutor.




     Complaint received and sworn to in the Central Division of
the Boston Municipal Court Department on March 12, 2014.

     The case was heard by Michael J. Coyne, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Christopher DeMayo for the defendant.
     John P. Zanini, Assistant District Attorney, for the
Commonwealth.




     [1] Justices Spina, Cordy, and Duffly participated in the
deliberation on this case prior to their retirements.

GANTS, C.J.  The defendant, after being told by Boston police officers that he had an outstanding warrant, resisted arrest and assaulted the officers.  At a jury-waived trial in the Boston Municipal Court, the defendant offered a defense of lack of criminal responsibility, and called a forensic psychologist who described the defendant's lengthy mental health history and opined that the defendant was not criminally responsible at the time of the offense.  The Commonwealth did not present expert evidence on the issue of criminal responsibility in rebuttal but rather relied on the circumstances surrounding the offense and cross-examination of the defendant's expert to establish criminal responsibility. The judge denied the defendant's motion for required findings of not guilty by reason of lack of criminal responsibility and found the defendant guilty on all charges.

On appeal, the defendant contends that the judge must have relied on the so-called "presumption of sanity" because, without this presumption, the evidence did not support a finding of criminal responsibility beyond a reasonable doubt.  We conclude that the "presumption of sanity" is not truly a presumption but rather an inference that the defendant is probably criminally responsible because most people are criminally responsible for their acts.  Where a defendant proffers a defense of lack of criminal responsibility and there is some evidence that supports

it, this inference, standing alone, cannot support a finding that a defendant is criminally responsible beyond a reasonable doubt.  Although the Commonwealth may not rely on "the presumption of sanity" to establish criminal responsibility, the Commonwealth need not offer expert testimony in every case and may rely instead on the circumstances of the offense and all that the defendant did and said before, during, and after the offense to prove the defendant's criminal responsibility. Applying the proper test, we hold that the evidence here was sufficient to allow a reasonable finder of fact to conclude that the defendant was criminally responsible at the time of the offenses and, therefore, affirm the convictions.

Background.  We recite the facts that could have been found by the judge from the evidence at trial.  On March 11, 2014, Boston police Officers Paul Hayward and John Mullen were on routine patrol in full uniform in downtown Boston when Officer Hayward spotted the defendant, whom the officer knew to have outstanding warrants.  The officers got out of their vehicle and approached the defendant, who was walking, talking, and laughing with two other men.  As the officers approached, the defendant's eyes widened, and he looked over his shoulder.  When Officer Hayward blocked the defendant's path and told the defendant that the officer needed to speak with him, the defendant asked the officer to light his cigarette.  The officer declined, told the

defendant that he had an outstanding warrant, and asked for identification. The defendant stepped back and reached his hand down towards his pants pocket. Officer Hayward put his hand on the defendant's hand to prevent the defendant from reaching into the pocket. The defendant pushed Officer Hayward away. Officer Hayward then "took [the defendant] to the ground," and a struggle ensued during which both officers attempted to restrain the defendant and apply handcuffs. During the struggle, Officer Mullen inadvertently placed both cuffs on the same hand of the defendant. The defendant kicked Officer Mullen in the head several times and flailed his handcuffed hand. Eventually, they were able to restrain the defendant. Officer Hayward described the defendant as being coherent but "absolutely manic" during the struggle.

The defendant was arrested and taken to the police station, where he struggled with several other officers. Later that day, the defendant was taken to the Massachusetts General Hospital for a mental status evaluation. At the hospital, he was described as paranoid, disheveled, and having "flight of ideas." He was so agitated that he was given emergency antipsychotic medication.

After his arrest, the defendant appeared in the Quincy Division of the District Court Department on an unrelated matter. A judge of that court ordered the defendant to be

evaluated for his competency to stand trial, and the defendant was sent to Bridgewater State Hospital (Bridgewater) for that evaluation.

At trial, in support of his defense of lack of criminal responsibility, the defendant called a forensic psychologist at Bridgewater to testify regarding the defendant's mental health history and her opinion as to his criminal responsibility on the day in question. The doctor reported that the defendant has an "extensive" mental health history, which has involved ten admissions to Bridgewater, the first in 2000. Some of those admissions were the result of civil commitments; others resulted from referrals from correctional institutions. He was civilly committed at Bridgewater at the time of trial. The defendant has received mental health diagnoses of a psychotic disorder not otherwise specified, bipolar disorder, manic episodes with psychotic features, a mood disorder not otherwise specified, and schizoaffective disorder. His current diagnosis is schizoaffective disorder, bipolar type. In the past, he has been prescribed a combination of antipsychotic and mood-stabilizing medications. The defendant also has a history of substance abuse.

A month before the incident, the defendant had been in custody at the Nashua Street jail, where he was taking medications prescribed to manage his mental health symptoms.

But on February 21, 2014, the defendant was transferred to the Norfolk County Correctional Center, where his antipsychotic and mood-stabilizing medications were discontinued. The mood-stabilizing medication was later prescribed, but the defendant did not take it. The defendant was then transferred to the Middlesex County house of correction, where he was not prescribed any medication, and from there he apparently was released from custody. Consequently, there was no record indicating that the defendant had taken any medication from February 21 until the incident on March 11.

The doctor testified that when the defendant discontinues medications, he decompensates quickly, and he would likely become agitated, aggressive, impulsive, paranoid, and delusional. He also would likely hear voices, exhibit poor insight, and exercise poor judgment.

The doctor also described what the defendant had told her about the incident. He said that he was walking down the street when someone wearing a yellow suit with a reflective emblem approached him and asked, "What the fuck is your name?"[2] He thought the person could have been a street cleaner or a security guard but did not think that the person was a police

---

[2] The defendant recalled only one person approaching him; he did not recall a second person being involved in the altercation.

officer.  He thought that the person was trying to torment him and was going to take him back to jail.[3]

The doctor opined that the defendant was likely manifesting symptoms of schizoaffective disorder on the day of the incident, including paranoid delusions.  She also opined that his actions were driven by a distorted sense of reality caused by the symptoms of his mental illness and that he could not conform his conduct to the requirements of the law on the day of the offense.

On cross-examination, the doctor stated that her conversations with the defendant occurred after she provided him with a Lamb warning, see Commonwealth v. Lamb, 365 Mass. 265, 270 (1974), informing him that his statements would not be confidential and could be used in court.[4]  She testified that she

---

[3] The defendant's statements to the forensic psychologist were hearsay and therefore admissible only for the limited purpose of assessing the credibility of the doctor's opinion regarding the defendant's criminal responsibility; they were not admissible for the truth of the matters asserted.  See Commonwealth v. Brown, 449 Mass. 747, 768-769 (2007).  See generally Mass. G. Evid. § 801(d)(2) (2016) (party's out-of-court statement is hearsay unless offered in evidence by opposing party).  However, neither party sought to limit the admissibility of these statements, and the judge did not declare that he would do so.  Where otherwise inadmissible hearsay is admitted without objection or request for a limiting instruction, it may be considered by the finder of fact for all purposes.  See Commonwealth v. Washington, 449 Mass. 476, 487 (2007).

[4] In Commonwealth v. Lamb, 365 Mass. 265, 270 (1974), we held that communications between an individual and a mental

first encountered the defendant three weeks after his arrest; she did not examine the defendant on the day of the offense. The doctor reviewed the defendant's records from the Massachusetts General Hospital regarding his examination there on March 11 and 12, but did not review any subsequent medical records before March 31, when the defendant was sent to Bridgewater. She acknowledged the defendant's history of substance abuse and testified that he admitted to using cocaine on the day of the incident. The doctor concluded that the defendant was not malingering, but she initially did not rule out that possibility. She also testified that the defendant has been noncompliant with taking his medication in the past and has been violent while hospitalized at Bridgewater even when he was taking his medication.

The prosecution did not offer any expert testimony in rebuttal. At the close of all the evidence, the defendant moved for required findings of not guilty by reason of lack of criminal responsibility, arguing that the evidence was insufficient as a matter of law to prove beyond a reasonable doubt that the defendant was criminally responsible at the time

---

health professional made during a court-ordered examination are privileged pursuant to G. L. c. 233, § 20B, unless the individual is informed that the communications would not be privileged.

of the offenses.[5]   The judge denied the motion and found the defendant guilty on all counts:  two counts of assault and battery on a public employee, in violation of G. L. c. 265, § 13D; one count of assault and battery by means of a dangerous weapon (shod foot), in violation of G. L. c. 265, § 15A; one count of assault by means of a dangerous weapon (handcuffs), in violation of G. L. c. 265, § 15B;[6] and one count of resisting arrest, in violation of G. L. c. 268, § 32B.  The defendant appealed, and we allowed his motion for direct appellate review.

Discussion.  The defendant argues that the judge erred in denying his motion for required findings of not guilty by reason of lack of criminal responsibility.  He also contends that the prosecutor made improper comments to the judge in arguing against that motion.

1.  Criminal responsibility.  Where a defendant asserts a defense of lack of criminal responsibility and there is evidence at trial that, viewed in the light most favorable to the

---

[5] Although counsel moved for required findings of not guilty, and did not specify that she was moving for required findings of not guilty by reason of lack of criminal responsibility, it is clear from the evidence at trial and the content of her argument that her motion sought the latter finding.

[6] The complaint charged the defendant with assault and battery with the handcuffs, but after the prosecution rested, the judge ordered the complaint amended to allege the lesser included offense of assault with the handcuffs because the evidence showed that the defendant "flailed" the handcuffs but never struck anyone with them.

defendant, would permit a reasonable finder of fact to have a reasonable doubt whether the defendant was criminally responsible at the time of the offense, the Commonwealth bears the burden of proving beyond a reasonable doubt that the defendant was criminally responsible.  Commonwealth v. Keita, 429 Mass. 843, 849-850 (1999).  "In this process, we require the Commonwealth to prove negatives beyond a reasonable doubt:  that the defendant did not have a mental disease or defect at the time of the crime and, if that is not disproved beyond a reasonable doubt, that no mental disease or defect caused the defendant to lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."  Id., citing Commonwealth v. McHoul, 352 Mass. 544, 546-547 (1967).

The defendant contends that, where the Commonwealth offered no expert evidence that the defendant was criminally responsible and where there was nothing about the circumstances of the commission of the crimes or the defendant's conduct after their commission that would suggest that he was criminally responsible, it must be inferred that the judge denied the motion for required findings of not guilty based solely on the "presumption of sanity," even though the judge made no reference to such a presumption.  The defendant further claims that the inference arising from this "presumption" alone cannot support a

finding beyond a reasonable doubt that the defendant was criminally responsible.

The Commonwealth contends that a judge may not allow a motion for a required finding of not guilty based on the Commonwealth's failure to prove criminal responsibility because criminal responsibility is not an "element" of any of the offenses charged. We agree that criminal responsibility is not an "element" of any crime. Commonwealth v. Kostka, 370 Mass. 516, 532 (1976). If it were, the United States Supreme Court would not have upheld the constitutionality of Federal and State laws that place the burden on a defendant to prove that he or she was not criminally responsible at the time of the offense, because the Supreme Court has declared that due process requires that the prosecution bear the burden of proving every element of a crime. Id. at 531-532. See In re Winship, 397 U.S. 358, 364 (1970). See also Leland v. Oregon, 343 U.S. 790, 798-799 (1952) (due process does not mandate that prosecution bear burden of proof of criminal responsibility). However, even though criminal responsibility is not an "element" of a crime, once the defense of lack of criminal responsibility is proffered and some evidence is offered in support, a jury must be instructed that they must find the defendant not guilty by reason of lack of criminal responsibility if the Commonwealth has failed to meet its burden of proving criminal responsibility. See Commonwealth

v. Goudreau, 422 Mass. 731, 735-737 (1996); id. at 737-739 (Appendix). See also Model Jury Instructions on Homicide 1-2 (2013). Regardless of whether criminal responsibility is an "element" of a crime or a required "fact" to be proved, a conviction may not stand where no rational finder of fact could find the defendant criminally responsible. See Keita, 429 Mass. at 844 ("if the evidence did not permit a finding of criminal responsibility, [the defendant's] conviction would create a substantial risk of a miscarriage of justice"). Therefore, a required finding of not guilty by reason of lack of criminal responsibility may rest on the failure of proof of criminal responsibility. The absence of self-defense also is not an element of any offense, but where self-defense is claimed, we have considered whether the evidence of its absence is sufficient to support the denial of a motion for a required finding of not guilty. See Commonwealth v. McAfee, 430 Mass. 483, 495-496 (1999); Koonce v. Commonwealth, 412 Mass. 71, 73-74 (1992), S.C., 418 Mass. 367 (1994).

The Commonwealth also contends that, if criminal responsibility is a suitable ground for a defendant to move for a required finding of not guilty by reason of lack of criminal responsibility, the inference arising from the "presumption of sanity" alone is sufficient to defeat such a motion. We agree that, under current case law, the Commonwealth is correct. In

Commonwealth v. Smith, 357 Mass. 168, 178-180 (1970), S.C., 427 Mass. 245 (1998), we declared:

> "[A] court cannot direct a jury to return a verdict of not guilty by reason of insanity even though the only evidence on the issue is that the defendant was insane at the time of the alleged crime, and the evidence is uncontroverted. [One] reason, as stated in Commonwealth v. Clark, 292 Mass. 409, 415 [1935], is that 'although the burden of proof is on the Commonwealth to prove the defendant mentally responsible for crime . . . the fact that a great majority of men are sane, and the probability that any particular man is sane, may be deemed by a jury to outweigh, in evidential value, testimony that he is insane.' . . . It is for the jury to decide in each case whether they draw that inference. . . . If they draw that inference, it is for them to decide what weight they will give to it in the light of all of the evidence introduced on the issue. They may deem it to outweigh, in evidential value, psychiatric or other evidence that the defendant is insane. These are decisions to be made by the jury, and the court cannot direct the jury how they shall decide thereon."

See Keita, 429 Mass. at 847. We now revisit the doctrine arising from that case law.

A presumption in the classic sense is a rule of law where proof of fact A is sufficient to satisfy a party's burden to prove fact B, leaving the opposing party with the burden of production or persuasion to prove the nonexistence of fact B. 2 McCormick on Evidence § 342, at 675-677 (K.S. Broun ed., 7th ed. 2013). In criminal cases, presumptions have been considered to be either mandatory or permissive: mandatory presumptions require the finder of fact to "find the presumed fact upon proof of the basic fact, 'at least unless the defendant has come forward with some evidence to rebut the presumed connection

between the two facts,'" whereas permissive presumptions "allow[], but do[] not require, the trier of fact to infer the presumed fact from proof of the basic facts." Id. at § 346, at 716, quoting County Court of Ulster County, N.Y. v. Allen, 442 U.S. 140, 157 (1979). We have recognized that what has been called the "presumption of sanity" is "merely an expression we have used to describe both 'the fact that a great majority of men are sane,' . . . and 'the probability that any particular man is sane,' . . . , from which the jury may conclude that the defendant is sane" (citations omitted). Kostka, 370 Mass. at 530. The "presumption of sanity" is thus not a presumption under any meaning of the word. It is not premised on the admission in evidence of any basic fact to prove a presumed fact, but rather relies on a commonsense understanding regarding the sanity of the majority of the populace that need not be admitted in evidence. It is more accurately characterized as an inference; characterizing it as a presumption is a recipe for confusion.[7]

---

[7] We have declared that the "presumption of sanity" has a procedural characteristic in that it relieves the Commonwealth of the burden of proving criminal responsibility unless and until the defendant proffers the lack of criminal responsibility as a defense and some evidence is admitted in support of that defense. Commonwealth v. Kostka, 370 Mass. 516, 530 (1976). But this suggests that criminal responsibility is an element of an offense, which it is not, and that the presumption satisfies the prosecution's burden of proving that element where no evidence to the contrary is admitted. Lack of criminal

The inference that a defendant is probably sane because most people are sane is not strong enough alone to permit a rational finder of fact to conclude that a defendant is criminally responsible beyond a reasonable doubt.  Although it is probable that an individual selected randomly would be criminally responsible for his or her acts, that same probability would not attach to the tiny subset of the population who are criminal defendants with a long history of mental illness who proffer a defense of lack of criminal responsibility.  As Justice O'Connor wrote in a dissent in Commonwealth v. Kappler, 416 Mass. 574, 599-600 (1993) (O'Connor, J., dissenting):

> "The fact that a great majority of people are sane says little, if anything, about whether a particular defendant was sane when he or she engaged in a type of conduct in which the great majority of people do not engage.  The fact that a great majority of people are sane says absolutely nothing about whether the defendant in this case, . . . who had a long history of 'mental illness and auditory hallucinations,' . . . was sane on the morning that, staring straight ahead, he drove his automobile through a red traffic light on the Alewife Brook Parkway and then onto an adjacent footpath where he intentionally struck two people he had no reasonable or understandable motive to harm, and drove away" (citation omitted).

---

responsibility is a defense, like self-defense or defense of another, and, where the defense is not raised, the Commonwealth has no burden to rebut it.  See id. at 532.  In this procedural sense, a "presumption of sanity" is as nonsensical as a presumption that a person does not kill in self-defense or in defense of another.

See Commonwealth v. Ricard, 355 Mass. 509, 515 (1969) ("The probability that any particular man is sane may be of slight if any weight in the face of unanimous psychiatric opinion to the contrary, where it is plainly apparent from the evidence that the act committed is not one that a sane person would have committed, there being no circumstances [anger, revenge, rejection, jealousy, hatred, insult, intoxication, or the like] to account for the murderous act by a sane person").

To permit an inference based on the probability that a person in the general population is criminally responsible, standing alone, to support a finding beyond a reasonable doubt of criminal responsibility also diminishes the standard of proof beyond a reasonable doubt, especially where there is strong evidence of the defendant's mental health history and bizarre behavior. See Commonwealth v. McLaughlin, 431 Mass. 506, 523 (2000) (Spina, J., concurring) (noting "the obvious analytic problem of reconciling the reasonable doubt standard with a 'presumption' that permits jurors to 'infer' a particular defendant's sanity from general probabilities"); Commonwealth v. Mutina, 366 Mass. 810, 815 n.2 (1975) ("it may be questionable whether the 'beyond a reasonable doubt' standard and the 'presumption of sanity' can logically coexist in a case where there has been extensive evidence of insanity with no medical evidence to the contrary").

We therefore conclude that the inference that the defendant is criminally responsible because the great majority of persons are criminally responsible is not sufficient alone to warrant a rational finder of fact to conclude beyond a reasonable doubt that a defendant is criminally responsible.[8]  But this does not mean that the Commonwealth must offer expert evidence to meet its burden of proving criminal responsibility in every case where the issue is raised.  See Keita, 429 Mass. at 846 ("The Commonwealth . . . may prove sanity without presenting expert testimony").  See also Kostka, 370 Mass. at 535-536.  The Commonwealth may prove criminal responsibility through the inferences arising from the circumstances of the offense, including evidence that the defendant planned the offense, acted

---

[8] We also recognize that we earlier declared that "[a] jury instruction concerning the presumption of sanity should be given in every case in which the question of the defendant's criminal responsibility is raised."  Commonwealth v. Keita, 429 Mass. 843, 846 (1999).  The District Court followed this guidance by including in its model jury instruction 9.200 the sentence, "In considering whether or not the defendant was sane, if you feel it appropriate you may take into account that the great majority of people are sane, and that there is a resulting likelihood that any particular person is sane."  See Criminal Model Jury Instructions for Use in the District Court (1999).  An earlier version of the Model Jury Instructions on Homicide contained a substantially identical instruction.  See Model Jury Instructions on Homicide 51 (1999).  We now conclude that, given the meager weight of this inference and the risk of juror confusion regarding the burden of proof, judges should not instruct juries regarding this inference.  We note that the current Model Jury Instructions on Homicide make no reference to this inference in the instructions regarding criminal responsibility.  See Model Jury Instructions on Homicide 1-12 (2013).

on a rational motive, made rational decisions in committing the offense and in avoiding capture, and attempted to conceal the offense or his or her role in the offense.  See Commonwealth v. Cullen, 395 Mass. 225, 229 (1985) ("the judge was entitled to infer sanity from the facts underlying the crime"); Ricard, 355 Mass. at 515 (absence of motive for killing supports claim of lack of criminal responsibility).  The Commonwealth also may prove criminal responsibility through admissible evidence of the defendant's words and conduct before, during, and after the offense, including evidence of malingering.  See Cullen, supra at 229-230; Commonwealth v. Lunde, 390 Mass. 42, 47-49 (1983).

In deciding a motion for a required finding of not guilty by reason of lack of criminal responsibility, the judge must examine the evidence in the light most favorable to the Commonwealth and determine whether "the evidence and the inferences that reasonably could be drawn from it were 'of sufficient force'" to permit a rational finder of fact to conclude that the defendant was criminally responsible beyond a reasonable doubt.  See Commonwealth v. Scott, 472 Mass. 815, 820 (2015), quoting Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  A motion for a required finding of not guilty may be brought at the close of the Commonwealth's case and again at the close of all the evidence, see Commonwealth v. Sheline, 391 Mass. 279, 283 (1984), but we conclude that a motion for a

required finding of not guilty <u>by reason of lack of criminal responsibility</u> may be brought only at the close of all the evidence. The reason for the difference is that the Commonwealth need prove criminal responsibility beyond a reasonable doubt only after there is evidence presented of lack of criminal responsibility that is sufficient to warrant a reasonable doubt, see <u>Commonwealth</u> v. <u>Berry</u>, 457 Mass. 602, 612 & n.5 (2010), <u>S</u>.<u>C</u>., 466 Mass. 763 (2014), quoting <u>Commonwealth</u> v. <u>Mills</u>, 400 Mass. 626, 627 (1987), and such evidence is often presented only during the defendant's case. By limiting such motions for a required finding of not guilty by reason of lack of criminal responsibility to the close of all the evidence, we ensure that the Commonwealth has a full opportunity to offer evidence in rebuttal of any such defense claim.

In deciding such a motion at the close of all the evidence, a judge must view the evidence in the light most favorable to the Commonwealth and must disregard contrary evidence presented by the defendant, including the testimony of a defense expert, unless the contrary evidence demonstrates that the Commonwealth's evidence, or any inference drawn from such evidence, is "conclusively incorrect." See <u>Commonwealth</u> v. <u>O'Laughlin</u>, 446 Mass. 188, 204 (2006), quoting <u>Commonwealth</u> v. <u>Pike</u>, 430 Mass. 317, 323 (1999). See also <u>O'Laughlin</u>, <u>supra</u> ("the fact that the defendant has presented evidence that he did

not [commit the crime] does not affect the sufficiency of the evidence unless the contrary evidence is so overwhelming that no rational jury could conclude that the defendant was guilty"); Kater v. Commonwealth, 421 Mass. 17, 20, S.C., 421 Mass. 1008 (1995), and 432 Mass. 404 (2000).

It will be the rare case where the totality of the evidence regarding the defendant's conduct and the circumstances surrounding the offense will not be sufficient to defeat a defendant's motion for a required finding of not guilty by reason of lack of criminal responsibility.  Where, however, this evidence provides only weak support for a finding of criminal responsibility, the Commonwealth proceeds at its peril if it chooses to offer no expert testimony to rebut a defense expert's opinion of lack of criminal responsibility.  Cf. Kostka, 370 Mass. at 540 (Hennessey, C.J., dissenting in part) ("the Commonwealth runs the very real risk of reversal and the granting of a new trial if it chooses to rely on the presumption and the circumstantial evidence of sanity . . . , rather than to introduce medical evidence of sanity").

Applying the legal standard to the facts of this case, we conclude that this is not one of those rare cases, and that the evidence was sufficient as a matter of law to support a finding that the defendant was criminally responsible beyond a reasonable doubt.  Viewed in the light most favorable to the

Commonwealth, the evidence would allow a reasonable fact finder to infer that the defendant (1) told the doctor that he struggled with the officer because he feared he would be taken back to jail and therefore understood that the man was a police officer, with the power to arrest him; (2) attempted to divert the officers' attention by asking one of the officers to light his cigarette, because he feared that the officers were going to arrest him on an outstanding warrant and became violent once he realized that his ruse had failed; (3) fought the officers because he wanted to escape rather than be arrested and return to jail; and (4) was fabricating his claims that the person he assaulted was wearing a yellow suit with a reflective emblem and that he did not believe the person to be a police officer.

Although the testimony and opinion of the doctor "contradicted, and tended to undermine, the potency of the Commonwealth's case, it falls well short of demonstrating that the Commonwealth's evidence was 'conclusively incorrect.'" Pike, 430 Mass. at 323, quoting Kater, 421 Mass. at 20. See Kater, supra ("Deterioration would occur not because the defendant contradicted the Commonwealth's evidence . . . , but because evidence for the Commonwealth necessary to warrant submission of the case to the jury is later shown to be incredible or conclusively incorrect" [citation omitted]).

2.  Argument by prosecutor.  The defendant also argues that the prosecutor made improper assertions to the judge in arguing against the defendant's motion for required findings of not guilty.  Specifically, the defendant claims that the prosecutor's argument that the defendant had the capacity to understand his actions at the time of the offenses and that he deliberately chose not to take medications were not supported by the evidence adduced at trial.  As to the argument that the defendant had the substantial capacity to understand the legal and moral significance of his actions on the day of the offenses, our conclusion that the evidence was sufficient to support a finding of criminal responsibility also means that the prosecutor's argument was a "fair inference[] that might be drawn from the evidence."  See Commonwealth v. Ridge, 455 Mass. 307, 330 (2009), quoting Commonwealth v. Murchison, 418 Mass. 58, 59-60 (1994).

As to the argument that the defendant was deliberately refusing to take medication, the defendant cannot establish that he was prejudiced by any misstatement because, shortly after the prosecutor made that statement, defense counsel brought to the judge's attention the fact that the defendant was not prescribed medication at the Middlesex County house of correction before the incident.  Thus, it is unlikely that any misstatement

affected the trial judge's findings.  See <u>Commonwealth</u> v.
<u>Beaudry</u>, 445 Mass. 577, 584-585 (2005).

<u>Conclusion</u>.  The order denying the defendant's motion for
required findings of not guilty by reason of lack of criminal
responsibility is affirmed, and the defendant's convictions are
affirmed.

<u>So ordered</u>.