NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-1351                                        Appeals Court

COMMONWEALTH  vs.  MANUEL BRUNETTE-SILVEIRA.

No. 24-P-1351.

Suffolk.      November 4, 2025. – May 12, 2026.

Present:  Hershfang, Hodgens, & Smyth, JJ.


Assault and Battery on Certain Public Officers and Employees.
     Threatening.  Mental Health.  Criminal Responsibility.
     Insanity.  Evidence, Insanity, Expert opinion.  Witness,
     Expert.  Practice, Criminal, Motion for a required finding.




     Complaint received and sworn to in the Central Division of
the Boston Municipal Court Department on June 2, 2023.

     The case was heard by Mark H. Summerville, J.


     Meghan K. Oreste for the defendant.
     Megan Keane (David D. McGowan, Assistant District Attorney,
also present) for the Commonwealth.


     HERSHFANG, J.  After a bench trial by a judge of the Boston

Municipal Court, the defendant was convicted of four counts of

assault and battery on a police officer in violation of G. L.

c. 265, § 13D, and one count of threatening to commit a crime in

violation of G. L. c. 275, § 2.  The defendant contends, as he

did in two motions for a required finding of not guilty, that the evidence at trial was insufficient as a matter of law to permit a rational fact finder to find beyond a reasonable doubt that he was criminally responsible at the time of the crimes. We agree and reverse.

Background.  Because the defendant challenges the sufficiency of the evidence, we describe the trial evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Griffin, 475 Mass. 848, 849 (2016).  The charges arose after two police officers were called to the Edward W. Brooke Court House for a person causing a disturbance.  Because our analysis depends in large part on distinguishing evidence from inference, we describe in some detail the testimony of those two officers, who were the victims of the charged crimes and the Commonwealth's only trial witnesses.

When the officers arrived at the court house, they spoke with court officers who provided a description of the person and the direction in which he had gone.  The officers set out from the court house and, about one minute later, found someone matching the description (the defendant) sitting on the stairs "right down the street."  The officers approached the defendant, saying "something to the effect[] of" "can we speak with you," or "how are you, sir?"  The defendant responded, "What bitch" and immediately spit on the face and chest of one of the

officers (first officer).  The officers arrested and handcuffed the defendant and put him in the cruiser for the short drive to the police station.

At the station, the officers sought to remove the defendant from the cruiser.  He spit on the second officer's head and said "something to the effect of, 'What, bitch, I'm going to punch you in the face.'"  The officers put the defendant "in [a] holding cell because he wasn't being cooperative.  [They] let him calm down.  Then [they] attempted to take him out and fingerprint him."  When they removed his handcuffs, the defendant punched the second officer in the shoulder.  The officers replaced the handcuffs and returned the defendant to the cell.

The second officer had no further contact with the defendant.  The first officer tried to remove the defendant from the cell and the defendant "threw a cup of toilet water on [him], in [his] face and [his] upper body."[1]  The defendant "was eventually booked" without the involvement of either of the arresting officers.  The record is devoid of evidence as to how, when, or by whom this booking was accomplished.

---

[1] From the officers' testimony it is not clear whether this incident occurred during the second booking attempt (when the defendant punched the second officer) or a third booking attempt.  Because it does not change our analysis, we need not try to resolve this ambiguity.

The defendant called an expert in forensic psychology, a licensed psychologist from Bridgewater State Hospital who first met and evaluated the defendant in 2019. The expert opined that on the day of the offense the defendant suffered from a chronic, major mental illness that included both psychotic symptoms and mood episodes, including what the expert characterized as a "manic episode" at the time of the offense. When the expert spoke with the defendant, the defendant "talked about experiencing hallucinations" in the police station, but "was not able to go into more specific detail about how those may have influenced his behavior." Because, in the expert's opinion, "that second level of analysis would have been required to opine whether such symptoms caused substantial impairments in [the defendant's] appreciation of wrongfulness and criminality," the expert was not able to reach a reliable conclusion on the defendant's appreciation of wrongfulness or criminality.

The expert concluded that the defendant "was experiencing substantial impairments in his ability to control his behavior at the time of the offense," including behaviors of "excessively masturbating and consuming his own semen" and "ingesting toilet water" while in the holding cell. The expert testified further that the "assaultive behavior, aggressive behavior, [and] hypersexual behavior" the defendant exhibited at the time of the offense "continued for multiple days . . . and did not stop

until he received multiple intramuscular injections of antipsychotic medication five to seven days after the offense occurred."

Discussion. "[A] required finding of not guilty by reason of lack of criminal responsibility may rest on the failure of proof of criminal responsibility." Commonwealth v. Lawson, 475 Mass. 806, 812 (2016). "A trial judge sitting without a jury is presumed, absent contrary indication, to have correctly instructed himself as to the manner in which evidence was to be considered in his role as factfinder." Commonwealth v. Batista, 53 Mass. App. Ct. 642, 648 (2002).

When a defendant raises a defense of lack of criminal responsibility and the trial evidence, if viewed "in the light most favorable to the defendant, would permit a reasonable finder of fact to have a reasonable doubt whether the defendant was criminally responsible at the time of the offense," then "the Commonwealth bears the burden of proving beyond a reasonable doubt that the defendant was criminally responsible." Lawson, 475 Mass. at 811. The Commonwealth then must "prove negatives beyond a reasonable doubt," first, "that the defendant did not have a mental disease or defect at the time of the crime" or, second, "if that is not disproved beyond a reasonable doubt, that no mental disease or defect caused the defendant to lack substantial capacity either to appreciate the criminality

of his conduct or to conform his conduct to the requirements of law." Id., quoting Commonwealth v. Keita, 429 Mass. 843, 849-850 (1999).

The Commonwealth may not simply rest on the so-called "presumption of sanity." Lawson, 475 Mass. at 814. "[T]he inference that the defendant is criminally responsible because the great majority of persons are criminally responsible is not sufficient alone to warrant a rational finder of fact to conclude beyond a reasonable doubt that a defendant is criminally responsible." Id. at 815. Instead, "through the inferences arising from the circumstances of the offense," the Commonwealth must demonstrate criminal responsibility. Id. at 816. Expert testimony is not required. See Keita, 429 Mass. at 846. "A trier of fact may reject the testimony of experts that a defendant lacked criminal responsibility and may infer sanity from the defendant's conduct and the facts of the crime." Id.

To evaluate the sufficiency of the Commonwealth's evidence of criminal responsibility, we "examine the evidence in the light most favorable to the Commonwealth" to "determine whether 'the evidence and the inferences that reasonably could be drawn from it were "of sufficient force"' to permit a rational finder of fact to conclude that the defendant was criminally responsible beyond a reasonable doubt." Lawson, 475 Mass. at 816, quoting Commonwealth v. Scott, 472 Mass. 815, 820 (2015).

Accordingly, we "must disregard contrary evidence presented by the defendant, including the testimony of a defense expert, unless the contrary evidence demonstrates that the Commonwealth's evidence, or any inference drawn from such evidence, is 'conclusively incorrect'" (citation omitted). Lawson, supra at 817.  "It will be the rare case where the totality of the evidence regarding the defendant's conduct and the circumstances surrounding the offense will not be sufficient to defeat a defendant's motion for a required finding of not guilty by reason of lack of criminal responsibility."  Id.

The evidence in this case -- particularly the expert's testimony -- "viewed in the light most favorable to the defendant, would permit a reasonable finder of fact to have a reasonable doubt whether the defendant was criminally responsible at the time of the offense."  Lawson, 475 Mass. at 811.  The Commonwealth therefore bore "the burden of proving beyond a reasonable doubt that the defendant was criminally responsible."  Id.

Having determined that the Commonwealth bore the burden of proving the defendant was criminally responsible, we disregard the testimony of the defendant's expert, see Lawson, 475 Mass. at 817, and view both the remaining evidence and inferences favorably to the Commonwealth.  The Commonwealth's proof must be through "the inferences arising from the circumstances of the

offense, including evidence that the defendant planned the offense, acted on a rational motive, made rational decisions in committing the offense and in avoiding capture, and attempted to conceal the offense or his or her role in the offense." Id. at 816. In assessing whether the Commonwealth met its burden, "[w]e are not permitted to pile inference upon inference." Commonwealth v. Mazza, 399 Mass. 395, 399 (1987). Having applied this lens, we conclude that the Commonwealth failed to prove criminal responsibility beyond a reasonable doubt. Although there was ample, uncontested evidence that the defendant spit on, hit, and threw toilet water at the officers, the trial evidence was insufficient to meet the Commonwealth's burden to prove that he did not lack the substantial capacity to (1) appreciate the criminality or wrongfulness of his conduct and (2) conform his conduct to the requirements of law. See Commonwealth v. Rezac, 494 Mass. 368, 371 (2024).

There is no evidence of what happened on the short cruiser ride from the scene of the first assault to the police station. There is no evidence that the defendant "calmed down" when left in the cell to do so. There is no evidence of how the defendant was booked, or the process followed, or when the booking was accomplished. The dissent rests on inferences as to what happened when neither testifying witness was present, but that failure of proof left an evidentiary hole that cannot be filled

solely with inference. See Commonwealth v. Simpkins, 470 Mass. 458, 461-462 (2015); Commonwealth v. Oyewole, 470 Mass. 1015, 1016 (2014) (Commonwealth may rely only on "reasonable and possible" inferences drawn from circumstantial evidence to satisfy its burden). This absence of evidence did not give rise to an inference that the defendant's conduct proved criminal responsibility.

The Commonwealth failed to carry its burden. In Commonwealth v. Fujita, 497 Mass. 46, 59-62 (2026), for example, the court ruled that the evidence was sufficient for the jury to reject the defendant's assertion of lack of criminal responsibility in light of his clear motive for the killing, his state of mind (upset about his breakup with the victim), and his "calculated steps to avoid detection," including assuring that no one would come home during the time the victim was there, instructing her to park out of sight, taking care to ensure that the murder was blocked from public view, and taking a "series of methodical steps to disperse evidence and avoid detection." Id. at 61. Similarly, in Griffin, 475 Mass. at 851-853, 856, the defendant "appeared to be acting normally in the days leading up to the killing," helped a friend care for his ailing father, and prepared a "last will and testament" before leaving to kill his daughter. Id. at 856. "There was also evidence that the defendant carefully planned the killing . . . by assembling all

of the materials he might need during the assault and placing them in his backpack." Id. He walked to the crime scene in the rain to avoid making noise with his Jeep, cut telephone lines both inside and outside the house, turned off the electricity, "ensur[ing] that any occupants who awoke would be left in the dark," and took care to clean up and repack his belongings, then left the house without waking anyone. Id. at 857.

Those were extreme cases. But even in cases that were closer to this one -- that is, closer to the line -- the Commonwealth has provided more evidence. Lawson, like this case, involved an assault on an arresting police officer. Lawson, 475 Mass. at 818. There, the court determined that the evidence was sufficient for a fact finder to infer that

> "the defendant (1) told the doctor that he struggled with the officer because he feared he would be taken back to jail and therefore understood that the man was a police officer, with the power to arrest him; (2) attempted to divert the officers' attention by asking one of the officers to light his cigarette, because he feared that the officers were going to arrest him on an outstanding warrant and became violent once he realized that his ruse had failed; (3) fought the officers because he wanted to escape rather than be arrested and return to jail; and (4) was fabricating his claims that the person he assaulted was wearing a yellow suit with a reflective emblem and that he did not believe the person to be a police officer."

Id. Critical to the court's analysis was that, in addition to evidence about what the defendant did when approached by the officers, the judge had evidence of what the defendant did beforehand ("walking, talking, and laughing with two other men,"

and asking the officer to light his cigarette, id. at 808), as well as the defendant's post hoc explanations of his behavior to the testifying expert.  No similar evidence was introduced here.  The trial evidence was limited to the defendant's charged criminal conduct and did not include any evidence of his acting in a rational, deliberate, or calculated manner.

Commonwealth v. McGillivary, 102 Mass. App. Ct. 501 (2023), also involved an attempted assault on a police officer.  In that case, the Commonwealth carried its burden by offering "evidence of the defendant's words and conduct before, during, and after the offense."  Id. at 504, quoting Lawson, 475 Mass. at 816.  We concluded that the evidence of criminal responsibility was sufficient because it permitted a rational fact finder to infer that

> "(1) the defendant was aware of his own mental health issues when he called police to request hospitalization for a mental health evaluation hours before his confrontation with police; (2) the defendant's threats to shoot anyone who came to his door were motivated by police officers' refusal to 'get off [his] property' and 'leave [him] alone'; (3) the defendant knew that his threats and conduct toward police were wrong when he refused to leave his house despite multiple attempts by police to negotiate with him to come outside; and (4) the defendant possessed the ability to control his behavior because, while he was described as 'agitated,' 'angry,' and 'yelling' during interactions with the police, he was 'calm' when speaking with his cousin during the [eight-hour] standoff."

McGillivary, supra.  Again, no such evidence appears on the record before us.

Finally, in Keita, 429 Mass. at 844-845, the defendant first spoke and gestured obscenely to a fellow passenger on a Massachusetts Bay Transportation Authority (MBTA) red line train and then, as she disembarked, lunged for her, groped her, and muttered obscenities. He was apprehended by another person and, when the victim returned with three uniformed MBTA officers, the defendant "was cooperative and his arrest uneventful"; during the booking process "immediately following his arrest," the defendant "was docile and responsive to questions concerning his personal history" (citation omitted). Id. at 845. A forensic psychologist testified that the defendant was suffering from mental illness on the day of the attack and would have had "substantial difficulties conforming his behavior to the requirements of the law." Id.

Affirming the conviction, the court identified (1) "police testimony that, when arrested, the defendant did not struggle, did not act in an erratic way, and was cooperative," (2) the defendant's cooperative behavior during booking, and (3) the fact that, when interviewed by the testifying psychologist, the defendant's responses suggested he "knew what lawful conduct was." Id. at 848-849. The court described this evidence as "thin," but concluded that, taken together with the (later questioned) "presumption of sanity," it was sufficient to

support the judge's finding of guilt.  Id. at 849.  See Lawson,
475 Mass. at 813-815 & nn.7, 8.

If the evidence in Keita was "thin," this was gossamer.
Without either the pre-Lawson "presumption of sanity" or a
factual basis from which to infer intent, awareness of
criminality, or rational action, see Lawson, 475 Mass. at 816,
it was an error of law to "pil[e] . . . inference upon inference
or conjecture and speculation," Commonwealth v. Armand, 411
Mass. 167, 170 (1991), and deny the defendant's motions for a
required finding of not guilty.[2]

The judgments are reversed, the findings are set aside, and
judgments of not guilty by reason of lack of criminal
responsibility shall enter.  The case is remanded for the
process applicable to persons found not guilty by reason of lack
of criminal responsibility.  See G. L. c. 123, § 16.

So ordered.

---

[2] The cases cited by the dissent as to inferring sanity only
drive home the distinction.  In each, the fact finder was
presented with evidence that went beyond the bare criminal acts
to reveal purposeful behavior:  in Commonwealth v. Cullen, 395
Mass. 225, 230 (1985), the defendant's history of steady
employment before the crime, combined with his targeted and
accurate shooting at police officers, followed by flight to the
home of the defendant's lawyer and a surrender in response to
being told to "give it up"; and, in Commonwealth v. Cole, 380
Mass. 30, 33, 35-36 (1980), plans to kill two specific coworkers
while reassuring others -- accurately -- that they were safe
and, after the shootings, behaving rationally during booking
including calmly invoking Miranda rights.

HODGENS, J. (dissenting).  "It will be the rare case where the totality of the evidence regarding the defendant's conduct and the circumstances surrounding the offense will not be sufficient to defeat a defendant's motion for a required finding of not guilty by reason of lack of criminal responsibility."  Commonwealth v. Lawson, 475 Mass. 806, 817 (2016).  The evidence presented by the Commonwealth shows that this is not that rare case.

Such evidence, offered through the testimony of two arresting officers, showed the defendant engaged in unlawful and belligerent goal-directed behavior that also reflected a strong "anti-police" animus aimed at the uniformed officers who confronted him on the street:  the defendant caused a disturbance at the loading dock of the court house and left the scene; two uniformed officers found him sitting on stairs about a one-minute drive from the court house; the defendant immediately spat on the first uniformed officer who spoke to him and called the officer a bitch; the officers arrested the defendant and transported him in a police cruiser to the station where he spat on the second arresting officer, called him a bitch, threatened to strike him, and later punched him in the shoulder; the officers placed the defendant in a holding cell where he calmed down; upon interacting with the first officer again, the defendant threw toilet water at him; although

initially agitated during booking, the defendant changed his behavior when the first arresting officer left the room; and the defendant successfully completed the booking process with another officer. Viewing the totality of this evidence, and only this evidence, in the light most favorable to the Commonwealth, I must conclude that the trial judge properly denied the defense motion for a required finding of not guilty by reason of insanity. See Lawson, 475 Mass. at 817 (reviewing court and judge "must disregard contrary evidence presented by the defendant, including the testimony of a defense expert").

Until today, our appellate courts have never taken the question of criminal responsibility away from the fact finder. Indeed, the Supreme Judicial Court has repeatedly cautioned against doing so. See, e.g., Commonwealth v. Rasmusen, 444 Mass. 657, 662 n.6 (2005) (required finding generally "not appropriate where the defense is lack of criminal responsibility"); Commonwealth v. Fernandes, 436 Mass. 671, 676 (2002) ("we are aware of no case in which we have ordered the entry of a judgment of not guilty by reason of the defendant's lack of criminal responsibility after a jury has rejected such a defense"); Commonwealth v. Rosenthal, 432 Mass. 124, 130 (2000) (same). Especially given the "paramount role of the [fact finder] in assessing the defendant's criminal responsibility,"

the Commonwealth's evidence did not compel a finding of not guilty by reason of insanity. Rasmusen, supra at 663.

It is well settled that the Commonwealth is not required to produce expert testimony to show that the defendant had the mental capacity to commit the crime. See Lawson, 475 Mass. at 815-816. Sanity may be inferred from "testimony of lay witnesses who observed [the] defendant at relevant times, [and] the evidence as to the circumstances of the commission of the crime." Blaisdell v. Commonwealth, 372 Mass. 753, 765-766 (1977). Accord Lawson, supra. The fact finder may infer sanity from the "facts underlying the crime and evidence of [the defendant's] actions before and after the crime." Commonwealth v. Cullen, 395 Mass. 225, 229 (1985). Those facts showed that by aggressive words and actions, the defendant directed his anger toward the two uniformed police officers who approached him while he passively sat on stairs. His repeated acts directed only at the two arresting officers evinced intentional, goal-directed conduct successfully targeting the officers who were the objects of his anger. See, e.g., Lawson, supra at 815, quoting Commonwealth v. Ricard, 355 Mass. 509, 515 (1969) ("anger, revenge, rejection, jealousy, hatred, insult, intoxication, or the like" may account for behavior by sane person); Commonwealth v. LaCava, 438 Mass. 708, 714 (2003) ("serious impediment" to husband's potential insanity defense to

murder of wife included "anger over their impending divorce");
Commonwealth v. Francis, 355 Mass. 108, 111 (1969), S.C., 411
Mass. 579 (1992) (rational motives supporting sanity may include
"jealousy, hatred, greed, envy, frustration of aroused sexual
desire or the like").  A fact finder could readily conclude that
anger and animosity rather than a mental disease or defect
motivated the defendant to act as he did.  See Commonwealth v.
Lunde, 390 Mass. 42, 47-48 (1983) (Commonwealth may carry its
burden even when conceding defendant suffered from mental
disease or defect).

Beyond discerning a rational motive, the fact finder could
also infer sanity from evidence and reasonable inferences
showing the defendant was "oriented as to time, place, and
persons."  Commonwealth v. Cole, 380 Mass. 30, 36 (1980).  He
caused a disturbance outside the court house, yet maintained the
presence of mind to leave before the police could arrive; he sat
passively on stairs along a city street, yet betrayed his
frustration at being tracked down by the police; and he spat on
the arresting officers and struck them, yet he managed to
complete the booking process with other officers.  From this
sequence of events a fact finder could conclude that the
defendant engaged in "calculated behavior" and was "fully
capable of committing" the charged crimes.  Jackson v. Virginia,
443 U.S. 307, 325 (1979).  The defendant's situational awareness

became particularly evident when he showed the ability to turn his hostility on when interacting with the arresting officers and turn it off twice -- first, when placed in the holding cell, and second, when another officer suggested that an arresting officer leave the room to enable the defendant to complete the booking process with different officers.  See, e.g., Lawson, 475 Mass. at 807 (sufficient evidence of sanity where defendant "resisted arrest and assaulted the officers" but had rational motives); Cullen, 395 Mass. at 226 (sufficient evidence of sanity where defendant "threw a rock at a marked police cruiser" and fired gunshots at officers but attempted to evade capture); Commonwealth v. McGillivary, 102 Mass. App. Ct. 501, 502, 504 (2023) (sufficient evidence of sanity where defendant "threatened to shoot" police but showed "ability to control his behavior").

The majority characterizes the Commonwealth's evidence of sanity as "gossamer," suggests certain inferences are unwarranted, and provides a contrasting and detailed account of the defense expert's opinion (based on the defendant's "functioning, thoughts, feelings, [and] motivations at the time of the offense," medical records, and psychiatric care rendered five days after the arrest), but on appeal we should not be reweighing evidence in all but name.  See Cullen, 395 Mass. at 231 n.4 ("extreme thinness of evidence" speaks to weight of

evidence and is inappropriate appellate consideration [citation omitted]).  The sufficiency "inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  Jackson, 443 U.S. at 318-319, quoting Woodby v. Immigration & Naturalization Serv., 385 U.S. 276, 282 (1966).  Weighing the evidence and inferences from the evidence is the role of the fact finder who notably considered and expressly rejected the testimony of the defense expert in its entirety.  That alternative inferences may be drawn from the evidence by an appellate court does not render the evidence insufficient in the trial court.  See Commonwealth v. Latimore, 378 Mass. 671, 678-679 (1979).  An inference "need only be reasonable and possible; it need not be necessary or inescapable" (citation omitted).  Commonwealth v. Merola, 405 Mass. 529, 533 (1989).  Also, just because the Commonwealth could have presented more evidence, as has been done in archetypal criminal responsibility cases such as homicides, does not mean that the evidence presented here (through just two police witnesses) was necessarily insufficient to prove criminal responsibility for assault and battery on a police officer and threatening to commit a crime.  When reviewing the denial of a motion for a required finding of not guilty, we should be focused on the Commonwealth's evidence and indulge all reasonable inferences in favor of the Commonwealth.  We should

also not engage in an extensive review of the defense expert's testimony, particularly where the parties never disputed that the Commonwealth shouldered the burden of proving the defendant's criminal responsibility. See Commonwealth v. Goudreau, 422 Mass. 731, 737 (1996) (Commonwealth bears burden to prove criminal responsibility "once the issue . . . is raised"). Ultimately, "[t]he question of what inferences to draw from this evidence is for the [fact finder] . . . and not this court." Commonwealth v. Kappler, 416 Mass. 574, 579 (1993).

Finally, sufficiency of the evidence does not turn on the level of the Commonwealth's ardor for the case -- it is controlled by the evidence and inferences from the evidence. At trial, the Commonwealth unsuccessfully attempted to stipulate to the police reports, unsuccessfully attempted to stipulate to the defense expert report, waived the opening statement, waived cross-examination of the defense expert, waived the argument on a required finding motion at the close of evidence, and in a brief closing argument announced that the prosecution declined to "contest[]" the testimony of the defense expert. Once the parties submitted the case to the fact finder, the evidence, and not the strategy or will of the parties, controlled the result. That evidence enabled, but did not compel, the judge to conclude that the defendant was criminally responsible for spitting on,

striking, and threatening the two police officers who arrested him.  At no point in the trial did the Commonwealth's evidence compel the judge to find the defendant lacked criminal responsibility for this conduct.  Only by adverting to the defense evidence can the majority reach the result that it does.  If, however, we look only at the Commonwealth's evidence and draw all inferences in its favor, then we have a man on a city street who directed anger and violence at two uniformed police officers -- an event that is neither inexplicably irrational nor, sadly, unusual.